**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 22-cv-61046-CMA**

ALAA ELTAHIR,
on behalf of herself and all
those similarly situated,

      Plaintiff,

v.

NOMI HEALTH, INC., a Delaware Corporation;
MEDX STAFFING INC., a Florida Corporation;
MARK NEWMAN, an individual;
JOSHUA WALKER, an individual;
DANIEL SCHWENDIMAN, an individual;

      Defendants.

_____/

**PLAINTIFF'S MOTION FOR COLLECTIVE ACTION**
**WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff, ALAA ELTAHIR, on behalf of herself and on behalf of all others similarly situated ("Plaintiffs"), by and through their undersigned counsel, and pursuant to 29 U.S.C. § 216(b), hereby file this Motion for Certification as a Class with Incorporated Memorandum of Law supported, the declarations of Plaintiff, ALAA ELTAHIR, along with eight (8) other hourly employees who worked as LPNs, RNs and CNAs. The Plaintiff and these similarly situated employees were all denied overtime payments. Their Declarations and attached paystubs show hours worked in excess of 40 hours per week paid at their straight time rate, a clear and undeniable FLSA violation. Additionally, attached hereto are the Proposed Notice of Rights and Consent Form.

Section 216(b) of the Fair Labor Standards Act ("FLSA") provides that an action to recover unpaid overtime compensation may be maintained against any employer by employees for themselves and on behalf of other employees similarly situated. *See* 29 U.S.C. § 216(b). All

licensed practical nurses (LPN), registered nurses (RN), medical assistants (MA), and certified nursing assistants (CNA) who worked for Defendants performed the same, if not identical, work and were subject to the same, if not identical, pay policy. As such, this case should be conditionally certified as a collective action and notice should be issued to putative class members.

## <u>INTRODUCTION</u>

Plaintiff on behalf or herself and others similarly situated, filed a complaint in this action on June 2, 2022 alleging failure to pay overtime in violation of the Fair Labor Standards Act [FLSA], 29 U.S.C. §216. Plaintiff and other similarly situated employees ["the FLSA Collective"] routinely worked in excess of forty (40) hours per week, without being compensated at a rate of time and one half. Plaintiff and the FLSA Collective are non-exempt employees of Defendants and are entitled to overtime compensation in accordance with the provisions of the FLSA.

1. The sole issue presented by this Motion is whether Plaintiff and others similarly situated met their lenient burden for this Court to conditionally certify this case as a collective action under the FLSA and authorize the dispatch of notice of the pendency of this suit to workers similarly situated to Plaintiff.

2. Plaintiff sued Defendants to collect unpaid overtime compensation owed to her and the class of similarly situated workers. An employee can bring an action under the FLSA on behalf of herself and all other similarly situated employees. 29 U.S.C. § 216(b).

3. Plaintiff is far from alone in the subsequent failure to be paid overtime. The class Plaintiff seeks to conditionally certify ("Class Members") is properly defined as:

> **All hourly workers employed by NOMI HEALTH, INC. and/or MEDIX STAFFING INC. between September 1, 2020 and June 1, 2022 in the positions of Registered Nurses (RNs), Licensed Practical Nurses (LPNs), Certified Nursing Assistants (CNAs), or Medical Assistants (MAs) who worked over 40 hours in a workweek and did not receive overtime payments at time and one half their hourly rate for each hour worked over forty.**

Class Members are all owed wages relating to the overtime, and they have the right to learn of the pendency of this action and participate should they choose. However, each individual Class Member cannot be identified or notified without access to the Defendants' records. Therefore, to effectuate notice, Plaintiff requests an order compelling Defendants to provide Plaintiff's counsel all contact information including names, birth dates, driver's license numbers, social security numbers, cell or other telephone numbers, email addresses, mailing addresses, and dates of employment for all Class Members.

Notice to all employees at the earliest opportunity is appropriate to effectuate the policies of the FLSA. *See Barrintine v. Ark. Freight Sys.*, 450 U.S. 728, 739 (1981) (FLSA's policy is to shield employees from oppressive hours and substandard wages). Time is particularly of the essence regarding the federal law claims because every prospective member of the FLSA collective action must affirmatively "opt in" to the action in order to toll the statute of limitations for his or her claim. 29 U.S.C. § 255(b). Therefore, Plaintiff respectfully requests that the Court rule on this Motion in an expedited fashion.

## I.  FACTUAL BACKGROUND

This motion is supported by the declaration of Plaintiff, ALAA ELTAHIR. Plaintiff and the FLSA Collective were employed with Defendants Nomi Health, Inc. and Medix Staffing as Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and Medical Assistants ("MAs") who received an hourly wage as compensation. These RNs, LPNs, and MAs were responsible for performing Covid-19 testing at various testing sites throughout the state of Florida. Each received an hourly wage from their labor, ranging from seventeen dollars ($17.00) an hour to forty-five dollars ($45.00) an hour.

Plaintiff also relies on the declarations of the following employees whom, like Plaintiff,

worked overtime without being paid and their attached paystubs proving same. The Declarants include:

| Declarant | Position | Dates of Employment |
|---|---|---|
| Valerie Toussaint | LPN  and RN | 9/2020 – 12/2020 |
| Ismerie Petit | LPN | 9/2020 – 5/17/2022 |
| Madiane Jean Pierre | LPN | 9/2020 – 5/2/2022 |
| Erna Edouard | LPN | 3/31/2021– 5/17/2022 |
| Litrenne Beaubriant | LPN | 6/2021– 5/19/2022 |
| Karl-Roberte Donatien | RN | 12/9/2020 – 4/5/2022 |
| Guirlene Bastien | LPN | 9/14/2020– 4/11/2021 |
| Darline Philippi | CNA | 6/5/2021-5/2/2022 |

Plaintiff and the FLSA Collective routinely worked in excess of forty (40) hours per week. The members of the putative collection action are Plaintiff and those employees who routinely worked in excess of forty (40) hours per week, without being compensated at their proper overtime rate. Plaintiff and the FLSA Collective were paid straight time and are therefore owed  half-time for all hours worked over 40 per week. Plaintiff and the FLSA Collective are non-exempt employees of Defendants and entitled to overtime compensation in accordance with the provisions of the FLSA.

Defendants' policy and practice was to pay straight time only. The following excerpt from a payroll check is instructive:

**Company Code**
KE / 6F7 25774471
MedX Staffing Inc
1380 E 330 S
Provo, UT 84606

**Loc/Dept**
01/

**Number**
326657

**Page**
1 of 1

## Earnings Statement

Period Starting:    06/27/2021
Period Ending:      07/03/2021
Pay Date:           07/09/2021

Taxable Marital Status:
Exemptions/Allowances:          Tax Override:
        Federal:    0           Federal:
        State:      0           State:
        Local:      0           Local:
Social Security Number:         XXX-XX-XXXX

**Alaa Eltahir**
**8742 SW 21st Ct**
**Miramar, FL 33025**

| ...gs | rate | hours/units | this period | year to date | Other Benefits and Information |
|---|---|---|---|---|---|
| Compensation | 45.0000 | 83.03 | 3736.35 | 43145.66 | Total Hours Worked |
| Reimb | | | 0.00 | 60.00 | |

| | | this period | year to date |
|---|---|---|---|
| **Gross Pay** | | **$3,736.35** | $0.00 |
| **Net Pay** | | **$3,736.35** | |

Deposits
account number
XXXXXX3917

On this earnings statement, Plaintiff worked 83.03 hours for the week of June 27, 2021, through July 3, 2021. Defendants paid her the same hourly pay rate ($45.00) for all hours worked despite Plaintiff working well and above forty (40) hours in that week. Defendants paid Plaintiff $3,736.35 [83.03 x $45.00] for that week when they should have paid Plaintiff $4,704.53 [(40 x $45) + (43.03 x $67.50)].

Defendants own pay records[1] demonstrate that Plaintiff and the FLSA Collective earned overtime and were not paid properly. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, overtime compensation pursuant to the FLSA.

---

[1] The Defendants did not deduct taxes from the Plaintiffs pay and while their pay records refer to the Plaintiffs as "contractors" The missclassification of Plainitffs is addressed below.¶

As a result of Defendants violation of the FLSA, Plaintiff and the FLSA Collective are entitled to liquidated damages in an amount equal to the underpayment of overtime compensation and may seek recovery dating back three (3) years from the filing of this action.

## II.     MEDX STAFFING AND NOMI HEALTHCARE ARE JOINT EMPLOYERS

MedX Staffing Inc. and its parent company[2] Nomi Health, Inc. easily meet the FLSA's definition of an "employer," defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203 (d).

The definition of "employer" in the FLSA is "broadest definition that has ever been included in any one act."[3] "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Falk v. Brennan*, 414 U.S. 190, 195 (1973); 29 C.F.R. § 791.2. The FLSA's definition of employer must be ***liberally construed*** to effectuate the FLSA's remedial purpose. *Antenor v. D&S Farms*, 88 F.3d 925, 933 (11th Cir. 1996). Thus, the courts look to the "'economic reality' of all circumstances" rather than common law concepts to determine who is an employer. *Aimable v. Long & Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994).

Here, Plaintiff and the FLSA collective in this action were hired by MedX Staffing, Inc. and placed with Nomi Health at various locations in South Florida. MedX is a business outsourcing/staffing company that places health care workers throughout the United States.  Nomi Health is a healthcare startup company, founded in 2019, and currently serving 10 states.  During the pandemic, Nomi Health staffed hundreds of Covid-19 testing sites throughout the country and employed Plaintiff and the FLSA Collective at large to complete testing.  While MedX Staffing hired Plaintiff and the FLSA Collective, Nomi Healthcare, managed, scheduled, disciplined, and

---

[2]  See DE 27 Defendants' Corporate Disclosure Statement.

[3] *Antenor v. D&S Farms*, 88 F.3d 925, 929 n. 5 (11th Cir. 1996); *Patel v. Quality Inn South*, 846 F.2d 700, 702 (11th Cir 1988).

tracked the time of Plaintiff and the FLSA Collective. Moreover, Nomi Health set the locations of work for Plaintiff and the FLSA Collective, issued their paychecks, and terminated MedX employees if need be.

### A. Individual Defendants Newman, Walker, and Schwendiman

Individual defendants Mark Newman, Joshua Walker, and Daniel Schwendiman are also "employers" under the FLSA.

The FLSA creates a private right of action against any "employer" who violates its overtime provisions. *See, Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (citing 29 U.S.C. § 216(b)). The Eleventh Circuit explains that [the FLSA] defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any ***person*** acting directly or indirectly in the interests of an employer in relation to an employee.' " *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)).*Id.*

"[I]n order to qualify as an employer under the FLSA, a supervisor "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Lamonica*, 711 F.3d at 1313 quoting *Alvarez Perez*, 515 F.3d at 1160). This would involve "control over 'significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee.' " *Id.* at 1314 (quoting *Alvarez Perez*, 515 F.3d at 1160). "[W]hile control need not be continuous, it must be both substantial and related to the [*10] company's FLSA obligations." *Id.*

Defendants admit that the individual defendant Schwendiman and Newman are acting officers with both corporate defendants. Daniel Schwendiman is currently a vice president of Nomi Health, Inc. and a corporate officer of MedX Staffing, Inc. (See Answer DE 20 Page 4, ¶ 8). Mark

Newman is Chief Executive Officer of Nomi Health, Inc. and acting President of MedX Staffing, Inc. (See Answer DE 30 ¶6). Defendants admit that Joshua Walker Chief Operating Officer of Nomi Health, Inc. (See Answer DE 30 ¶¶ 6 and 7).

"The overwhelming weight of authority is that *a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation*." *Donovan v. Hamm's Drive Inn,* 661 F.2d 316 (5th Cir. 1981) (owner officers active in management of corporation were "employers" subject to individual liability). [Emphasis Added].

The interpretive regulations promulgated by the Department of Labor also recognize the existence of multiple employers for purposes of FLSA liability and reflect the expansive definition of employer found in the Act. 29 CFR §791.2.

Once joint employment status is established as it is here, all employers are jointly and severally liable for unpaid overtime.  29 CFR § 791.2(a).

### III.   VIOLATIONS OF THE FLSA SHOULD BE CERTIFED AS A §216(b) COLLECTIVE ACTION

#### A. Legal Standard for FLSA Conditional Certification

The FLSA permits a plaintiff to bring a collective action on behalf of similarly situated persons subject to the requirement that prospective plaintiffs file a written consent in the court where the action is brought. *See* 29 U.S.C. § 216(b); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1216 (11th Cir.2001) (citations omitted). The purposes of at §216(b) action under the FLSA are: "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan v. Fam. Dollar Stores*, 551 F.3d 1233, 1264 (11th Cir. 2008) (*citing Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)). Courts may facilitate such a collective action under § 216(b) by authorizing notice of the suit to potential plaintiffs. *Hoffman-*

*La Roche, Inc., v. Sperling*, 493 U.S. 165, 169 (1989)) (finding that a collective action allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources). "Unlike a Rule 23 class action, in which each person falling within a certified class is bound by the judgment unless he or she opts out, each putative plaintiff must affirmatively opt into a Section 216(b) class action." *Bennett*, 880 F. Supp. 2d 1270 at 1282 (*citing De Leon-Granados v. Eller and Sons Trees, Inc.,* 497 F.3d 1214 (11th Cir. 2007)).

"The Eleventh Circuit suggests that district courts use a two-stage process in deciding whether to create an opt-in class and to facilitate notice." *Id.* (*citing Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208, 1219 (11th Cir. 2001). The first stage is known as the "notice" or "conditional certification" stage." *Id.* At the conditional certification stage, the court must find there are likely other employees who (1) are similarly situated regarding their job requirements and pay provisions, and who (2) desire to opt into the case. *See Dybach v. Fla. Dep't of Corr.,* 942 F.2d 1562, 1567–68 (11th Cir. 1991). Regarding the first requirement, plaintiffs bear the burden of proving they and the class they seek to represent are similarly situated. *See Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.1996).

The first-stage determination is typically in response to a motion to conditionally certify a class, made prior to discovery, and is based primarily on pleadings and affidavits. *Anderson v. Cagle's Inc*., 488 F.3d 945, 953 (11th Cir. 2007). Courts apply a "fairly lenient standard" for determining whether plaintiffs are truly similarly situated. *Id.* "Where discovery has not been completed, the typical result is that the motion is granted." *Bennett*, 880 F. Supp. 2d 1270 at 1283 (S.D. Fla. 2012) (*citing Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F. 3d 1240, 1243 (11th Cir. 2003)).

To be covered by the suit, putative participants in the FLSA collective action must affirmatively "opt-in." *Morris v. TruGreen Ltd. P'ship*, No. 6:17-cv-1465-Orl-40GJK, 2018 U.S. Dist. LEXIS 129830, at *5 (M.D. Fla. June 14, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 128858 (M.D. Fla. Aug. 1, 2018). The statute of limitations for each putative potential class member is not tolled until he or she individually opts into the litigation. 29 U.S.C. §216(b). Therefore, to address the problem of an individual's FLSA rights being diminished through lack of notice, the Supreme Court has held that courts should facilitate the issuance of a notice informing potential opt-in plaintiffs of the pending FLSA collective action. *Hoffman-La Roche Inc.*, 493 U.S. at 170. Furthermore, court approval and facilitation of notice to the putative plaintiffs serves the twin judicial policies of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id*. at 171. The plaintiffs must, of course, demonstrate that similarly situated potential class members exist in order to establish that an opt-in class should be created under Section 216(b) and that the Court should order notice to potential opt-in plaintiffs. *See Grayson*, 79 F.3d at 1096; *Reeves v. Alliant Techsystems, Inc.,* 77 F.Supp.2d 242 (D.R.I. 1999).

The instant motion is before the court during the first stage of the two-step inquiry. In order to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are "similarly situated." *Romero v. Fla. Power & Light Co.*, No. 6:09-cv-1401-Orl-36GJK, 2012 U.S. Dist. LEXIS 197650, at *4 (M.D. Fla. Feb. 22, 2012) (quoting *Hipp*, 252 F.3d at 1217); 29 U.S.C.§ 216(b). The "similarly situated" requirement is not particularly stringent. *Hipp*, 252 F.3d at 1214.[4]

---

[4] In *Hipp v. Liberty National Life Insurance Co*., 252 F.3d 1208 (11th Cir.2001), the Eleventh Circuit specifically considered collective actions brought under the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. §§ 621–34. *Hipp*, 252 F.3d at 1214–15. However, the *Hipp* analysis is relevant to FLSA collective actions because "[p]laintiffs wishing to sue as a class under ADEA must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed.R.Civ.P. 23." *Hipp*, 252 F.3d at 1216 (citation omitted).

"'Plaintiffs need show only that their positions are similar, not identical to the positions held by the putative class members.'" *Id.* at 1217 (*Quoting Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). Plaintiffs are not required to prove that "each" member of the certified class is similarly situated, "rather that the class members are similarly situated as a group*." Romero*, 2012 U.S. Dist. LEXIS 197650, at *8.

As the Eleventh Circuit has advised, the "district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1259 (*quoting Dybach*, 942 F.3d 1562, 1367-68) *accord Bernstein v. Town of Jupiter,* No. 21-81215-CV-MIDDLEBROOKS, 2021 U.S. Dist. LEXIS 248721, at *3 (S.D. Fla. Oct. 13, 2021). The "putative class members need not hold identical positions to the named plaintiffs…. Nor is 'a unified policy, plan, or scheme' required." *Bernstein*, 2021 U.S. Dist. LEXIS 248721, at *3 (*citing Grayson*, 79 F.3d at 1095.

The court makes its determination usually only based on pleadings and any affidavits that have been submitted. In the Southern District of Florida, courts have found that "existence of just one other co-worker who desires to join in is sufficient to 'rais[e] the Plaintiff's contention beyond one of pure speculation.'" *Bennett*, 880 F. Supp. 2d at 1283 (quoting *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 U.S. Dist. LEXIS 58484, at *4 (S.D. Fla. May 17, 2006)).

B. **The Declarations in this Case satisfy the §216(b) Requirements for Conditional Certification**

Here, Plaintiff presents the Court with seven (7) potential Class Members coupled with their respective paystubs. *See* Composite Exhibit 1. Each declaration lists the job title for the putative class member as CNA, MA, RN or LPN, their dates of employment, how they were paid

hourly and not paid overtime when they worked over 40 hours, and proof of same in the form of paystubs demonstrating a lack of overtime pay. These are more than just "boilerplate declarations" that "lack specificity and cast doubt on the declarants' personal knowledge about the matters contained therein." *Bernstein*, 2021 U.S. Dist. LEXIS 248721, at *6.  This Court should grant Plaintiff's Motion for Conditional Certification because the evidence presented herein shows: (1) there are similarly situated putative class members who (2) may desire to opt into the case.

Defendants' failure to pay overtime was part of an institution-wide practice for a specific period. The evidence available at this point strongly supports the assertion that Plaintiff and Class Members are similarly situated with respect to their job requirements and compensation scheme. Certainly, the evidence adduced in this motion satisfies the lenient standard under the applicable law. Therefore, this Court should grant conditional certification and authorize notice, as this case certainly appears to parallel all of the decisions above.

### C. <u>Notice is Required for Class Members to Opt-In</u>

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche, Inc.*, 493 U.S. at 170. Federal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and to give them the opportunity to participate by opting in. *Id.* at 169–70. Notice is particularly important for FLSA collective actions as potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff "gives his consent in writing to become a party and such consent is filed in the court in which such action is brought." 29U.S.C. § 216(b). "Moreover, the Eleventh Circuit has held that the broad remedial purpose of the FLSA 'is best served if the district court is deemed to have the power [under the appropriate circumstances] to give … notice to other potential

members of the plaintiff class to 'opt-in' if they so desire …'" *Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 682 (S.D. Fla. 2004) (*quoting Dybach*, 942 F.2d 1562, 1567).

Plaintiff requests the Court approve the proposed Notice of Rights and Consent Form, attached hereto as Exhibits 2 and 3, respectively. Plaintiff's proposed court-approved notice to the potential opt-ins informs Class Members of their rights to opt-in to this litigation in a neutral manner, provides that this Court has yet to decide the merits of the dispute, and provides that Defendants cannot retaliate against them for exercising their rights.

Plaintiff requests that the Court allow Plaintiff to publish the Proposed Notice of Rights and Consent form via mail, email, and on a website specifically designated for this action in order to assist with the administration of the class.  If the Court approves publication on a website, Plaintiff will submit under separate motion for approval of the proposed website, including but not limited to the website's URL, the main page, the Notice of Rights page, and the Consent Form page.

Plaintiff requests that the Proposed Notice of Rights and Consent Form be mailed by first class mail and disseminated by electronic mail to all Class Members employed by Defendants at any time from three years prior to the granting of this Motion to present.[5] Plaintiff further requests that this Court require Defendant to post this Notice online through Defendant's website and social

---

[5] Email notice is a common form of notification in FLSA cases. *See, e.g., Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) (concluding, "that dual postal mail and e-mail distribution is likely to "advance[ ] the remedial purpose of the FLSA by increasing the likelihood that all potential opt-in plaintiffs will receive notice." (quoting *Shoots v. iQor Holdings US Inc.*, No. 15 CV 563 (SRN/SER), 2015 WL 6150862, *22 (D.Minn. Oct. 19, 2015))). *Phelps v. MC Comm'ns, Inc.*, No. 2:11-CV-00423-PMP, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) (permitting e-mail notice because it is an efficient, reasonable, and low-cost supplemental form of notice); *Santiago v. Amdocs, Inc.*, No. C 10-4317 SI, 2011 WL 6372348 *8 (N.D. Cal. Dec. 19, 2011) (permitting notice via e-mail); *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, 9 (D. Or. Oct. 14, 2008) (permitting e-mail notice); *White v. Integrated Elec. Techs., Inc.*, No. 12-359, 2013 WL 2903070 at *9 (E.D. La. June 13, 2013) ("Plaintiffs have submitted ample authority indicating that federal district courts ... frequently utilize e-mail to provide notice of collective actions"); *Pippins v. KPMG LLP*, No. 11 CIV. 0377 CM JLC, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today ... email notice in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 ILG, 2011 WL 3235628, at *3 n.3 (E.D.N.Y. July 27, 2011) (finding e-mail to be "a relatively unobtrusive option" for providing notice).

media accounts, as well as for Defendant to attach this Notice to the paychecks for all tipped employees for the four pay periods preceding the granting of his Motion.

Plaintiff's counsel will oversee the mailing and emailing of such notices and pay the up-front charges for same. Those class members interested in participating would be required to return consents to Plaintiff's counsel for filing with the Court within 60 days of the mailing. Plaintiff requests permission to send text message notifications to the putative Class Members with a link to the notice form. While district courts in this state have been reluctant to grant such a means for notice, courts in this Circuit and others have left the door open for plaintiffs to show why other methods would be insufficient to possibly approve use of text messaging.[6] Due to the transient nature of the workers at issue, text messaging the putative employees is an appropriate method of notice due to its likely effectiveness of reaching putative class members. Courts across the country agree text messaging and utilizing other modern forms of communication to provide potential class members notice should be accepted and encouraged.[7]

---

[6] *See, e.g.*, *Miller v. JAH, LLC*, No. 5:16-CV-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) ("Although the court will not fully foreclose it yet, the court has serious reservations about sanctioning text messages as a way to reach the potential class.); *Kraft v. Freight Handlers, Inc.*, No. 618CV1469ORL41GJK, 2019 WL 3854989, at *6 (M.D. Fla. May 21, 2019), *report and recommendation adopted in part*, No. 618CV1469ORL41GJK, 2019 WL 3451479 (M.D. Fla. July 31, 2019) (finding plaintiff had not demonstrated a need to transmit the notice via text message in addition to notice via email like had been done in *Brashiers v. Quincy Prop., LLC*, 3:17-cv-3022, 2018 U.S. Dist. LEXIS 68948, at *21 (C.D. Ill. Apr. 24, 2018) (transitory nature of work force and poor records of physical addresses made notice by text message appropriate)).

[7] *See, e.g.*, *Desio v. Russell Rd. Food and Bev., LLC*, No. 215CV01440GMNCWH, 2017 WL 4349220, at *4-5 (D. Nev. Sept. 29, 2017) (granting plaintiff's request to send test message notifications to the putative class of exotic dancers with a link to a website containing the notice form, because the court found "in its discretion that due to the transient nature of dancers, contact via text messages does not seem 'unnecessary and redundant' [as the defendant argued]"); *Guanzon v. Vixxo Corp.*, No. CV-17-01157-PHX-GMS, 2018 WL 274422, at *3 (D. Ariz. Jan. 3, 2018) (granting plaintiff's stipulation to request phone numbers should other forms of contacting potential class members fail); *Avendano et al. v. Averus, Inc. et al.*, No. 14-cv-01614, (D. Colo. Oct. 25, 2016) ("Given the undisputed transient nature of the class and Plaintiff's assertion that text messaging is the most reliable form of communication, the Court finds that notification by text message is likely to be a viable and efficient means of notifying many prospective members of this collective action."); *Vasto v. Credico (USA) LLC*, No. 15 CIV. 9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) ("courts in this District have permitted email and text message distribution where, as here, the nature of the employer's business facilitated a high turnover rate among employees."); *Beltran v. InterExchange, Inc.*, No. 14–CV–03074–CMA–CBS, 2017 WL 4418684, at *6 (D. Colo. Apr. 28, 2017) ("The Court agrees that electronic notice through social media platforms is particularly appropriate for classes comprised of largely

Plaintiff further requests that Class Members be given the option to execute their consent forms online through an electronic signature service, a practice permitted in this Circuit.[8] This service allows Class Members to sign their consent forms electronically by clicking on a link in an encrypted email designated only for that user, which in turn allows them to review the document, indicate they read and understood the consent form, and type additional information. Users are instantaneously provided with a PDF copy of the form, and a copy is accessible to Plaintiff's counsel who will, in turn, file same with the Court. This method of communication and notification would merely be an additional option for signing the consent form.

Finally, Plaintiff proposes that notice be sent to the putative class members twice: the first time within seven days of receiving the list of putative class members and a second time 30 days after, but only to those class members who have not joined at that time. Reminder notices are important because, for instance, putative plaintiffs may not receive, open, or review the initial notice. Sending a reminder notice with a consent form helps to ensure that all persons who are interested in joining the action are able to do so within the prescribed period. Reminder notices have been found to be a reasonable means of notifying plaintiffs of the opportunity to join a class action lawsuit in wage and hour cases.[9] Other courts across the country and in the Eleventh Circuit

___

young, largely transient unnamed plaintiffs, because email addresses and physical addresses may not provide a reliable, durable form of contact.") (internal quotations, ellipses, and citation omitted).

[8] *Kraft v. Freight Handlers, Inc.*, No. 618CV1469ORL41GJK, 2019 WL 3451479, at *4 (M.D. Fla. July 31, 2019) (adopting recommendation of magistrate report that potential class members may electronically sign their consents); *Sellers v. Sage Software, Inc.*, No. 1:17-CV-03614-ELR, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018) (the Court will allow electronically signed consent forms); *See Destin v. World Fin. Grp.*, No. 1:13-cv-1092-CAP, Order at 4, Doc. 211 (N.D. Ga. Apr. 9, 2015) (approving notice that allowed the potential opt-in plaintiffs to join online by going to a website and electronically signing the consent form).

[9] *See, e.g.*, *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 844 (N.D. Ill. 2016) ("The court concludes this procedure, too, is reasonable, and therefore authorizes Plaintiffs to send one reminder notice to any potential opt-in plaintiff who has not replied 15 days prior to the end of the opt-in period."); *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1094 (D. Minn. 2014); *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 575 (D.N.J. 2014); *Reyes v. Quality Logging, Inc.*, 52 F. Supp. 3d 849, 853 (S.D. Tex. 2014); *Ortiz-Alvarado v. Gomez*, 2014 WL 3952434, at *6 (D. Minn. Aug. 13, 2014) (noting concerns about late opt-ins and concluding that "one reminder notice is reasonable to ensure that potential class members do receive the Notice and, if they so desire, file a timely opt-in notice.").

have recognized the importance of a reminder notice, and Plaintiff requests that this Court authorize it as well.[10]

### D. Requiring Defendants to Produce the Necessary Contact Information is Essential for Effectuating Notice

Discovery of a mailing list and contact information for Class Members in a computer-readable format is a necessary component of notice in collective actions. District courts have routinely ordered the production of names and addresses of potential collective action members to plaintiffs' counsel.[11]

Plaintiff requests that this Court order Defendants to provide this information within 20 days following entry of the order granting conditional certification. Defendants should therefore

---

[10] *Brown v. Discrete Wireless, Inc.*, No. 8:14-CV-1922-T-33EAJ, 2015 WL 667656, at *1 [Doc. No. 71] (M.D. Fla. Feb. 17, 2015) (order directing Plaintiffs to issue a "reminder notice" within 55 days of the Court's certification Order.); *Collado v. J. & G. Transp., Inc.*, No. 14-80467-CIV, 2014 WL 5390569, at *6 (S.D. Fla. Oct. 23, 2014) (permitted plaintiffs to transmit a reminder notice postcard to the putative class 14 days prior to the close of the court approved notice period.); *Weinstein v. 440 CORP.*, No. 2:19-CV-105-RWS, 2019 WL 5704137, at *5 (N.D. Ga. Nov. 4, 2019) (ordering the reminder notice only [be sent] to those who have not filed a consent form or indicated that they do not wish to participate.); *See, e.g.*, *Miller v. Fleetcor Techs. Operating Co.*, No. 1:13-CV-02403, 2014 U.S. Dist. LEXIS 200077 at *17 (N.D. Ga. April 8, 2014); *Bentley v. Flood Brothers, Inc.*, No. 1:13-cv-02282-RWS [Doc. No. 12] (N.D. Ga. Sep. 3, 2013) (approving reminder notice to be sent 30 days from opt-in deadline); *see also Florence v. Deli Mgmt.*, No. 1:18-cv-4303-SCJ, 2019 U.S. Dist. LEXIS 4379, at *10 (N.D. Ga. Jan. 9, 2019) (approving a sixty-day opt-in period with one reminder notice sent at the thirty-day mark); *Alexander v. CYDCOR, Inc.*, 2012 U.S. Dist. LEXIS 187258, 2012 WL 1142449, at *9 (N.D. Ga. 2012) (granting motion for preliminary certification and ruling "Plaintiffs are also permitted to send two additional mailings of the Notice to all potential class members..."); *Chhab v. Darden Rests.*, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) (authorizing reminder notice "to alert potential plaintiffs that the deadline is coming due"); *Jennings v. Cellco P'ship*, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012).

[11] *See, e.g.*, *Pittman v. Comfort Sys. USA (Se.), Inc.*, No. 8:12-CV-2142-T-30TGW, 2013 WL 525006, at *2 (M.D. Fla. Feb. 13, 2013) (requiring defendants produce the names, addresses, and email addresses of putative class members); *Gonzalez v. City of Deerfield Beach, Fla.*, No. 06-61341 CIV, 2006 WL 8446119, at *2 (S.D. Fla. Dec. 22, 2006) ("Defendant shall provide Plaintiff with a list containing the names, addresses, social security and telephone numbers of all current and former employees…"); *Dolan v. Mercury Ins. Co.*, No. 8:06-CV-600-T-26TGW, 2006 WL 8440189, at *2 (M.D. Fla. Sept. 11, 2006) ("Defendants will, however, be required to provide Plaintiffs' counsel with the names, addresses, and telephone numbers of the potential opt-in plaintiffs…"); *Lopez v. Real Monarca Inc.*, No. 2:17-CV-442-FTM-38CM, 2018 WL 2948528, at *4 (M.D. Fla. June 13, 2018) (ordering defendants to produce a list of names, last known addresses, telephone numbers, the last four digits of social security numbers, and email addresses of all individuals [in putative class]"); *Valente v. Int'l Follies, Inc.*, No. 1:15-CV-02477-ELR, 2017 WL 11113313, at *10 (N.D. Ga. June 19, 2017) ("Within twenty-one (21) days from the date of entry of this order, the Cheetah is to produce to Plaintiffs a list, in electronic and importable format, of all persons employed by the Cheetah as [adult] entertainers from July 10, 2012, to April 9, 2016, including their name, last known address, telephone number, dates of employment, date of birth, and last four digits of their Social Security number.").

be ordered to produce the names, all known addresses, phone numbers, dates of birth, all known email addresses, driver's license numbers, social security numbers, and dates of employment for all Class Members within 20 days after the Court grants the instant motion. All of the requested information is necessary to enable Plaintiff to confirm current addresses and/ or to locate those persons who may have moved. Production of all known email addresses is particularly important because such contact information does not change when a person moves, and email notice is an efficient and convenient form of communication. Without this information, Plaintiff would need to request extra time to accommodate those Class Members whose mail is returned, thereby delaying the timely resolution of this matter. In addition, providing phone numbers allows Plaintiff to verify the accuracy of the list by asking former employees if they know anyone who was subject to the same payroll practice. Finally, phone numbers are a vital and reasonable request considering the transient nature of the workers.

## IV.   THE MISCLASSIFICATION OF THE COLLECTIVE AS INDEPENDENT CONTRACTORS

As discussed below, it is premature for the Court to address the merits of Plaintiffs' misclassification claim. Those merit considerations are better addressed after discovery and at the second-stage of the FLSA 216(b) collective action. *See generally*, *Carrera v. UPS Supply Chain Sols.*, No. 10-60263-CV, 2012 U.S. Dist. LEXIS 192917 (S.D. Fla. Sep. 14, 2012). Nevertheless, a summary of the applicable law is provided only to put the alleged violations in context and to show how similarly situated the workers are with respect to the facts on this issue. As will become clear following conditional certification of the class, Plaintiff and the FLSA Collective were similar enough in employment for this Court to conduct an independent contractor/employee analysis for the class as a whole.

In determining whether a person is an "employee" under the FLSA, courts look to the "economic reality" of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer. *Aimable v. Long & Scott Farms, Inc.*, 20 F.3d 434, 439 (11th Cir.1994). Courts have applied various multifactor tests to guide the "economic reality" inquiry. S*cantland v. Jeffry Knight*, Inc., 721 F.3d 1308, 1311 (11th Cir. 2013). In this Circuit, the relevant factors are: (1) the nature and degree of the alleged employer's control of the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his or her managerial skill; (3) the alleged employee's own investment in equipment or materials required for the work or his or her employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an "integral part" of the alleged employer's business. *Scantland*, 721 F.3d at 1311. No one factor is controlling, nor is the list exhaustive. *Id.*

Ultimately, in considering economic dependence, the court focuses on whether an individual is "in business for himself" or is "dependent upon finding employment in the business of others." *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301–02 (5th Cir.1975); *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947) [The proper classification of workers depends on whether, as a matter of economic reality, the individuals "are dependent upon the business to which they render service."].

Here, Plaintiffs and the class were at all times employees. While at work, Defendants supervised Plaintiffs and oversaw the covid-19 testing protocols that Defendants had in place. The workers were entirely dependent upon the Defendants' testing locations and materials to perform Covid-19 tests. Plaintiffs did not have their own company or tax identification numbers.

They were required to abide by a variety of the Defendants' schedule, rules, and policies. They had little to no degree of control over how they performed their work. Defendant dictated the schedule, the reporting time and location of work.  Each week, Defendants would email and text message Plaintiff their scheduled locations for the week.  (**See Email denoting start time and location as Composite Exhibit 4**).

Defendants staffed hundreds of Covid-19 testing sites throughout the country. Unlike other putative collective actions involving healthcare workers where "the healthcare workers have a wide array of skills, responsibilities, and experiences with [the employer] and its clients," *Bamgbose v. Delta-T Grp., Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010), here Plaintiff and the FLSA Collective were all completing substantially the same job: Covid-19 testing entitling them to back overtime wages as employment and uniquely qualifying them for class certification.

Several cases have found that nurses and care givers are nonexempt employees, not contractors. *Solis v. A+ Nursetemps, Inc*., 2013 WL 1395863 (M.D. Fla. April 5, 2013); *see also Altman v. Sterling Caterers, Inc.,* 879 F.Supp.2d 1375, 1380 (S.D.Fla.2012). Putting on an independent contractor label does not take the worker from the protection of the FLSA. *Hughes v. Family Life Care, Inc.*, 117 F.Supp.3d 1365, 1369 (2015). That is, "a worker may be an independent contractor under other laws or for the purposes of contractual relationships, yet still meet the definition of an employee under the FLSA. *Id*.

As stated above, this merits-based argument is more properly analyzed after conditional certification and discovery when "the Court has [a] 'much thicker record' to determine whether plaintiffs are similarly situated." *Carrera*, 2012 U.S. Dist. LEXIS 192917, at *24 (quoting *Hipp*, 252 F.3d at 1218). But Plaintiff and the FLSA Collective present the above information to satisfy

the "fairly lenient standard" of conditional certification. *Anderson*, 488 F.3d at 953. (11th Cir. 2007).

V.      **CONCLUSION**

The Court should grant Plaintiff's Motion and provide the following relief to Plaintiffs:

(1) Conditionally certify this case as a collective action;

(2) Require Defendants to produce the contact information described above for all Class Members within 20 days of this Motion being granted in a computer-readable format;

(3) Authorize mailing of the Proposed Notice of Rights and Consent Form via first class mail, website, text messaging and email;

(4) Allow Class Members to execute their consent forms electronically;

(5) Approve that notice be sent to the putative class members twice: the first time within seven days of receiving the list of putative class members from Defendants and a second time 30 days after, but only to those class members who have not yet submitted their Consent Forms; and

(6) For any such other relief this Court deems just and proper at law or in equity.

**Rule 7.1(A)(3)(a) Pre-Filing Conference**

Plaintiff's counsel certifies that they have conferred in good faith with Defendants' counsel, Andrew McKinley of Seyfarth Shaw LLP, to attempt to resolve the issues in this motion. The parties were not able to reach an agreement.

//

//

//

//

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on **August 3, 2022**, on all counsel or parties of record on the Service List below.

s/Cathleen Scott
Cathleen Scott, Esq.
Florida Bar Number 135331
Primary e-mail: CScott@scottwagnerlaw.com
Secondary e-mail: mail@scottwagnerlaw.com
SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
Telephone: (561) 653-0008
Facsimile: (561) 653-0020
Secondary Address: 101 Northpoint Parkway
West Palm Beach, FL 33407
www.ScottWagnerLaw.com


s/Andrew Obeidy
Andrew Obeidy, Esq.
Florida Bar No. 910341
Email: andrew@obdlegal.com
Obeidy & Associates, P.A.
2755 E. Oakland Park Boulevard
Suite 225
Fort Lauderdale, FL 33306
Telephone: (305)892-5454
Facsimile: (954)206-6955

### <u>SERVICE LIST</u>
### CASE NO. 22-cv-61046-CMA

Andrew M. McKinley
Florida Bar No. 122069
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056
amckinley@seyfarth.com
*Attorney for Defendants*