**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  22-61046-CIV-ALTONAGA/Strauss**

**ALAA ELTAHIR**,

    Plaintiff,

vs.

**NOMI HEALTH, INC.**; *et al.*,

    Defendants.

_____/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff Alaa Eltahir's Motion for Collective

Action [ECF No. 40], filed on August 3, 2022.  Defendants Nomi Health, Inc., MedX Staffing

Inc., Mark Newman, Joshua Walker, and Daniel Schwendiman filed a Response [ECF No. 63],

to which Plaintiff filed a Reply [ECF No. 68].  For the following reasons, the Motion is denied.

**I.  BACKGROUND**

Plaintiff brings this putative collective action for Defendants' alleged violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  In her First Amended Complaint

[ECF No. 9], Plaintiff alleges that Defendants failed to pay her and other licensed practical

nurses, registered nurses, and medical assistants who worked in Florida FLSA-required overtime

between September of 2020 and June of 2022.  (*See* First Am. Compl. ¶ 12 ("FAC")).  In her

Motion, she seeks conditional certification of an FLSA collective that she defines as:

> All hourly workers employed by NOMI HEALTH, INC. and/or MEDIX [sic]
> STAFFING INC. between September 1, 2020 and June 1, 2022 in the positions of
> Registered Nurses (RNs), Licensed Practical Nurses (LPNs), Certified Nursing
> Assistants (CNAs), or Medical Assistants (MAs) who worked over 40 hours in a
> workweek and did not receive overtime payments at time and one half their
> hourly rate for each hour worked over forty.

(Mot. 2).

Nomi, a Delaware corporation with its principal place of business in Orem, Utah, is a healthcare startup company with operations in 12 states including Florida. (*See id.* 6; Resp., Ex. A, Price Decl. [ECF No. 63-1] ¶ 3; Resp., Ex. B, Tuisaula Decl. [ECF No. 63-2] ¶ 17). During the COVID-19 pandemic, Nomi operated hundreds of COVID-19 testing and vaccination sites throughout the United States. (*See* Price Decl. ¶ 5). Nomi has operated more than 300 sites in Florida alone. (*See* Tuisaula Decl. ¶ 17).

Nomi's testing and vaccination sites differ in duration, purpose, and location. Pertinent here, the company operates long-term, pop-up, and airport sites. (*See* Price Decl. ¶ 6). Nomi's long-term sites remain open for months or years, and a Nomi employee supervises long-term sites in person. (*See id.* ¶ 7). Likewise, Nomi used its own personnel to lead its airport sites. (*See* Tuisaula Decl. ¶ 7). Most of Nomi's locations, however, are pop-up sites. (*See* Price Decl. ¶ 8). Nomi organizes pop-up sites on short notice, and they can last anywhere from a single day to a few weeks. (*See id.*). Workers placed at airport sites typically have much longer shifts than those who work at other sites. (*See* Tuisaula Decl. ¶ 15).

Nomi is the parent company of MedX, a Utah corporation with its principal place of business in Orem, Utah. (*See* Mot. 6). MedX is one of several companies that provides staffing services to Nomi by engaging independent contractors to fill roles at Nomi Health's testing and vaccination sites. (*See* Tuisaula Decl. ¶¶ 4–5; Price Decl. ¶ 9). Sometimes, clinical workers staffed through MedX provided services to Nomi through their own companies with tax identification numbers, and Nomi paid those entities rather than the workers directly. (*See* Tuisaula Decl. ¶¶ 11–12). Many MedX clinical workers negotiated their pay rates and exercised rights to perform similar work for competitors. (*See id.* ¶¶ 12–13).

Unsurprisingly, workers at Nomi's sites had different job titles and, depending on their job titles, different responsibilities. Registered nurses, for example, conducted testing and some of them read the results of COVID-19 tests and administered COVID-19 vaccinations. (*See id.* ¶ 8). Some but not all registered nurses staffed through MedX lead Nomi's pop-up sites. (*See id.* ¶ 6). Registered nurses who acted as site leads earned additional incentive payments on top of their hourly rates. (*See id.*).

By contrast, licensed practical nurses, certified nursing assistants, and medical assistants did not read COVID-19 tests or administer vaccinations at Nomi sites. (*See id.* ¶ 9). The responsibilities of workers in those roles depended on the needs of the site: they might direct traffic, administer patient intake, provide COVID-19 tests to patients, or prepare vaccine shots. (*See id.*).

In addition to suing Nomi and MedX, Plaintiff also asserts claims against individual Defendants Schwendiman, Newman, and Walker. (*See* FAC 10–13). Schwendiman is currently a vice president of Nomi and a corporate officer of MedX. (*See* Mot. 7). Newman is Nomi's chief executive officer and MedX's acting president. (*See id.* 7–8). Walker is Nomi's chief operating officer. (*See id.* 8). None of these Defendants is domiciled in Florida. (*See* Price Decl. ¶ 4).

Plaintiff supports her request for conditional certification with eight declarations signed by former Nomi or MedX workers. (*See generally* Mot., Ex. 1, Pl.'s Decls. [ECF No. 40-1]). The declarants include Guirlene Bastien, a licensed practical nurse (*see id.* 2);[1] Litrenne Beaubriant, a licensed practical nurse (*see id.* 4); Karl-Roberte Donatien, a registered nurse (*see id.* 6); Erna Edouard, a licensed practical nurse (*see id.* 8); Madiane Jean Pierre, a licensed

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

practical nurse (*see id.* 10); Ismerie Petit, a licensed practical nurse (*see id.* 12); Darline Philippi, a certified nursing assistant (*see id.* 14); and Valerie Toussaint, a licensed practical nurse (*see id.* 16). The declarants each attest to having been hired by Nomi "and" MedX to "conduct [COVID]-19 testing" at Nomi's Fort Lauderdale Airport site and then denied due overtime pay. (*Id.* 2, 4, 6, 8, 10, 12, 14, 16 (alteration added)).

At least some of the declarants worked at other south Florida sites, too. For example, Plaintiff worked as a "co-driver" at a site in Hialeah, Florida; and Petit was once assigned to be "site staff" at a Home Depot in Miami, Florida. (Mot., Ex. 4, Emails to Pl. [ECF No. 40-4] 2, 5). At the beginning of each week, the declarants received emails outlining their upcoming work schedules, including their assigned locations.[2] (*See id.* 2–5).

Each of the declarants now wishes to join Plaintiff's FLSA suit. (*See* Pl.'s Decls. 3, 5, 7, 9, 11, 13, 15, 17). In addition to conditional certification of her proposed collective, Plaintiff seeks the Court's approval to mail and publish a notice of this action to potential class members. (*See* Mot. 12–17).

## II. LEGAL STANDARD

Collective actions brought under the FLSA serve dual purposes: "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264–65 (11th Cir. 2008) (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). To sue as a class under the FLSA, plaintiffs "must utilize the opt-in class mechanism provided in 29 U.S.C. [section] 216(b) instead of the opt-out class procedure provided in [Federal Rule of Civil Procedure] 23." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d

1208, 1216 (11th Cir. 2001) (alterations added; citation and footnote call number omitted). That is, plaintiffs using the section 216(b) procedure must affirmatively opt into the action; otherwise, they will not be bound by the judgment. *See Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1282 (S.D. Fla. 2012) (citation omitted).

To successfully opt in, "plaintiffs must demonstrate that they are 'similarly situated.'" *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) (quoting 29 U.S.C. § 216(b)). This opt-in standard is "not particularly stringent[.]" *Hipp*, 252 F.3d at 1214 (alteration added). The Eleventh Circuit has suggested that district courts use a "two-tiered approach" in deciding whether to certify FLSA collective actions. *Id.* at 1218–19. At the first step, which some courts have called "the notice stage, the district court makes a decision — usually based only on the pleadings and any affidavits [that] have been submitted — whether notice of the action should be given to potential class members." *Id.* at 1218 (alteration added; quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

Courts have only "minimal evidence" when making this initial conditional certification decision, so they apply "a fairly lenient standard" in making it. *Id.* (quoting *Mooney*, 54 F.3d at 1213–14). FLSA plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Calderone*, 838 F.3d at 1104 (quotation marks omitted; quoting *Hipp*, 252 F.3d at 1217). The plaintiffs bear the burden of establishing only "a reasonable basis" for their allegations of class-wide liability at step one. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citation and quotation marks omitted); *see also Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007) (clarifying that the "reasonable

---

[2] Plaintiff asserts in her Motion — not in any declaration or affidavit — that she and the declarants were employees, did not have control over when and where they worked, and did not provide services through

basis" test applies at step one of the two-tiered approach). Plaintiffs generally meet this burden with "detailed allegations supported by affidavits [that] 'successfully engage defendants' affidavits to the contrary.'" *Grayson*, 79 F.3d at 1097 (alteration added; citation and footnote call number omitted). The plaintiffs must also demonstrate that others, similarly situated, "may desire to 'opt-in.'" *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991).

District courts have broad discretion in making class certification decisions. *See Calderone*, 838 F.3d at 1103; *Morgan*, 551 F.3d at 1260; *see also Anderson*, 488 F.3d at 953–54 (emphasizing the "range of choice" enjoyed by district courts in making collective action certification decisions under section 216(b) (quotation marks and citation omitted)). If a court conditionally certifies a class, "putative class members are given notice and the opportunity to 'opt-in.'" *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1213–14); *see also Hoffmann-La Roche*, 493 U.S. at 170 (explaining that the benefits of collective actions under section 216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate").

Courts typically reach the second step after the parties complete discovery. At that time, the defendant may move to decertify the class. *See Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1213–14). The court must then make "a factual determination" about whether the putative class members are similarly situated. *Id.* (quoting *Mooney*, 54 F.3d at 1213–14). If they are, then the court denies the defendant's motion and the collective action proceeds to trial. *See id.* (quoting *Mooney*, 54 F.3d at 1213–14). If they are not, the opt-in plaintiffs "are dismissed without prejudice" and the original plaintiffs "proceed to trial on their individual claims." *Id.* (quoting *Mooney*, 54 F.3d at 1213–14).

---

their own companies or have tax identification numbers. (*See* Mot. 18–19).

### III. DISCUSSION

Plaintiff asserts that she and the declarants are similarly situated enough to warrant conditional certification of her proposed class. (*See* Mot. 11–12). The Court disagrees.

To start, Plaintiff's proposed class is overbroad in several respects. Most glaringly, the putative class defined in her Motion greatly expands the FAC's definition of the class. The FAC alleges only that workers in Florida were denied overtime pay (*see* FAC ¶ 12), but Plaintiff's Motion seeks conditional certification of a collective that is not limited in geographic scope (*see* Mot. 2). Similarly, the Motion defines the putative class as including certified nursing assistants (*see id.*), while the FAC makes no mention of workers in that role (*see* FAC ¶ 12).[3] *See Simmons v. Indian Rivers Mental Health Ctr.*, 652 F. App'x 809, 819–20 (11th Cir. 2016) (affirming district court's decision "limiting scope" of the plaintiff's claim "to the factual averments of the Complaint"); *Herrera v. U.S. Serv. Indus., Inc.*, No. 2:12-cv-258, 2013 WL 1610414, at *3 (M.D. Fla. Apr. 15, 2013) (denying motion to conditionally certify FLSA collective because "Plaintiff's proposed class goes beyond the scope of the miscalculation allegations contained in the Amended Complaint").

Just as troubling, none of the declarants claims to have worked outside of Florida.[4] (*See*

---

[3] Plaintiff has not filed a motion to amend the First Amended Complaint. *See Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1131–33 & n.16 (11th Cir. 2004) (contemplating "the fact that class definitions may undergo modification, possibly several times, during the course of a class action" but assuming that class action plaintiffs must amend the complaint under Federal Rule of Civil Procedure 15 to modify the class definition).

[4] Including opt-in plaintiffs who have not worked in Florida in this collective action would also raise significant questions about the Court's personal jurisdiction over those plaintiffs' claims, given that no Defendant is a citizen of Florida. Several federal courts of appeals that have addressed the question have held that federal courts lack personal jurisdiction in these circumstances. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370–71 (3d Cir. 2022); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865–66 (8th Cir. 2021); *Canady v. Anthem Cos., Inc.*, 9 F.4th 392, 397–98 (6th Cir. 2021). *But see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 97 (1st Cir. 2022). The existence of this unique defense for out-of-state plaintiffs provides an additional reason to avoid certifying a class that includes them as members. *See Anderson*, 488 F.3d at 954 n.8.

Pl.'s Decls. 2, 4, 6, 8, 10, 12, 14, 16).  In fact, they each specifically identify only a single site —
out of more than 300 Nomi sites in Florida — where they worked.  (*See id.*; Tuisaula Decl. ¶ 17).
Plaintiff's evidence thus does not support defining the collective as broadly as she proposes.
*See, e.g.*, *Robinson v. Dolgencorp, Inc.*, No. 5:06-cv-122, 2006 WL 3360944, at *2, 5, 7 (M.D.
Fla. Nov. 13, 2006) (recommending denial of motion to conditionally certify FLSA collective
partly because plaintiff submitted affidavits of workers at only one location).  At most, the
declarations support certification of a collective including registered nurses, licensed practical
nurses, and medical assistants who worked at south Florida sites.

But even with Plaintiff's proposed collective whittled down to that group, problems
remain.  Courts have considered several factors in determining whether FLSA plaintiffs are
similarly situated with putative class members, including

> (1) whether the plaintiffs held the same job title; (2) whether they worked in the
> same geographic location; (3) whether the alleged violations occurred during the
> same time period; (4) whether plaintiffs were subjected to the same policies and
> practices, and whether the policies and practices were established in the same
> manner and by the same decision maker; and (5) the degree to which the actions
> constituting the claimed violations are similar.

*Herrera v. Mattress Firm, Inc.*, No. 17-22048-Civ, 2017 WL 4270619, at *4 (S.D. Fla. Sept. 26,
2017) (citation omitted).  Beyond factual similarity, courts also evaluate "the various defenses
available to defendants that appear to be individual to each plaintiff[] and . . . fairness and
procedural considerations."  *Rojas v. Garda CL Se., Inc.*, No. 13-23173-Civ, 2015 WL 5084135,
at *6 (S.D. Fla. Aug. 28, 2015) (alterations added; citing *Anderson*, 488 F.3d at 953).

In totality, these considerations weigh against conditional certification in this case.  Two
factors favor Plaintiff (at least when the potential class is narrowed to include only workers in
south Florida): the declarants each worked at the same site and the alleged violations occurred
during the same, roughly 21-month time-period.  (*See* Mot. 4; Pl.'s Decls. 2, 4, 6, 8, 10, 12, 14,

16). But little else supports treating declarants and Plaintiff as a single mass. The declarants did not all have the same job title (*see* Mot. 4), and even workers with the same job title might have performed different functions depending on the needs of their sites (*see* Tuisaula Decl. ¶ 9). Moreover, although Plaintiff intimates that the declarants were all denied overtime under a widespread policy (*see* Mot. 5), neither she nor the declarants offer evidentiary details about the way Defendants implemented the policy or who made key compensation and classification decisions.

Plaintiff insists that what matters is not the potential opt-in plaintiffs' job titles, but their "job requirements[.]" (Reply 4 (alteration added; citing *Ciani v. Talk of the Town Rests., Inc.*, No. 8:14-cv-2197, 2015 WL 226013, at *3 (M.D. Fla. Jan. 16, 2015))). And here, says Plaintiff, the evidence shows that the declarants' job requirements were the same because they all attest that Nomi and MedX hired them to conduct COVID-19 testing. (*See id.* 4–5).

Plaintiff's argument makes an awful lot of very little. The declarants each attest (in identically worded language) that Nomi and MedX hired them to conduct COVID-19 testing. These bare statements are vague and unilluminating, given that Nomi is in the business of running COVID-19 testing sites. *See Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-22398-Civ, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) (explaining that "identical, cut-and-paste declarations" are not persuasive evidence of similarity); *Rappaport v. Embarq Mgmt. Co.*, No. 6:07-cv-468, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007) (observing that "federal courts . . . have routinely denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only [on] the conclusory allegations of few employees" (alterations added; footnote call number)). As a result, they fail to meaningfully engage with Defendants' more specific evidence that job responsibilities varied across job title,

testing site, and employee. *See Grayson*, 79 F.3d at 1097 (holding that FLSA plaintiffs meet their burden at the conditional certification stage with "detailed allegations supported by affidavits [that] 'successfully engage defendants' affidavits to the contrary'" (alteration added; citation and footnote call number omitted)).

Plaintiff's argument also takes a myopic view of the law. As explained, job responsibilities are just one of many factors that courts consider when deciding whether would-be plaintiffs are similarly situated. *See Herrera*, 2017 WL 4270619, at *4; *see also*, *e.g.*, *Hipp*, 252 F.3d at 1219 (considering putative class members' geographical locations and job titles); *Grayson*, 79 F.3d at 1097–99 (focusing on the defendant's implementation of management decisions that affected putative class).

While these factual issues are important, relevant "fairness and procedural considerations" provide the weightiest reasons to deny certification here. *Rojas*, 2015 WL 5084135, at *6 (citing *Anderson*, 488 F.3d at 953). The central liability question in this case is whether Defendants misclassified Plaintiff and other workers as independent contractors. *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311–12 (11th Cir. 2013) (explaining that "[t]he FLSA's overtime and minimum wage protections . . . . extend only to 'employees,'" not to independent contractors (alterations added; citations omitted)). To determine whether an individual is a covered "employee" under the FLSA, courts "look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Id.* at 1311 (collecting cases). In applying this "economic reality" test, courts focus not on the "'label' put on the relationship by the parties or the contract controlling that relationship, but rather . . . on whether 'the work done, in its essence, follows the usual path of an employee.'" *Id.* (alteration added; quoting *Rutherford Food Corp. v. McComb*,

331 U.S. 722, 729 (1947)).

The Eleventh Circuit has outlined six factors for courts to consider when determining whether an FLSA plaintiff is a covered employee:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1311–12 (footnote call number omitted). Still, the principal question that application of these factors serves to answer is the degree of the plaintiff's economic dependence on the alleged employer. *See Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311–12 (5th Cir. 1976) ("It is dependence that indicates employee status.").

Applying the "economic reality" test often requires "individualized determinations[.]" *Yoder v. Fla. Farm Bureau*, 446 F. Supp. 3d 956, 962 (N.D. Fla. 2020) (alteration added); *see also Herrera*, 2017 WL 4270619, at *7; *Lewis-Gursky v. Citigroup, Inc.*, No. 8:15-cv-2887, 2017 WL 892604, at *6 (M.D. Fla. Mar. 6, 2017). And in this case, especially, it is easy to see why.

Taking the first factor first, Plaintiff and the declarants offer little evidence to show that Defendants controlled their workers in similar ways, regardless of their disparate job titles. Available evidence suggests that many MedX workers performed work for Nomi through their

CASE NO. 22-61046-CIV-ALTONAGA/Strauss

own companies and enjoyed the freedom to do the same for other employers in the field. (*See* Tuisaula Decl. ¶¶ 7, 10–12); *see also Gutescu v. Carey Int'l, Inc.*, No. 01-4026-Civ, 2003 WL 25589036, at *2 (S.D. Fla. June 24, 2003) ("One of the factors relevant to an assessment of whether the Plaintiff was an employee or independent contractor is her ability to work for others in the same capacity.").

The remaining factors point in the same direction. In fact, the only evidence of similar control is the way Nomi informed Plaintiff and the declarants about their assigned testing locations by email at the start of each week. (*See* Pl.'s Emails 2–5). But this fact by itself sheds scant light on common ways in which Defendants exercised control over Plaintiff and the declarants. Other evidence spotlights vast differences between putative class members depending on their locations, job titles, and individualized circumstances.

For example, the record suggests, if anything, that many putative class members' pay varied based on managerial skills: some workers negotiated their own pay rates, others performed work through their own entities and freely worked for other employers, and still others received incentive compensation. (*See* Tuisaula Decl. ¶¶ 6, 11–13); *see also Scantland*, 721 F.3d at 1315 (noting that "Plaintiffs could not bid for jobs or negotiate the prices for jobs" in explaining why the plaintiffs were economically dependent on their employers); *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11-24432-Civ, 2012 WL 1933553, at *5 (S.D. Fla. Apr. 10, 2012) (denying conditional certification because evidence demonstrated that the opt-in plaintiffs "may not all have had the same formal relationship with Defendants").

Likewise, Plaintiff and the declarants have presented no evidence of similarity pertaining to the skill required to do their jobs, the permanency and duration of their employments, and their importance to MedX's business. Again, the record, if anything, points toward material

differences across these lines. (*See* Tuisaula Decl. ¶¶ 5–14). Plaintiff's only assertions to the contrary are unsubstantiated arguments of counsel.[5] (*See* Mot. 18–19; Reply 7–8).

Similar reasoning warrants rejecting Plaintiff's attempt to impose collective-wide liability on multiple Defendants. Deciding whether FLSA defendants are joint employers requires application of an eight-factor test that closely tracks the "economic reality" test. *See Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 F. App'x 940, 943 (11th Cir. 2012) (citing *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1178–81 (11th Cir. 2012)). For the same reasons that the declarations submitted by Plaintiff fail to disclose evidence supporting collective adjudication of the classification question, they also fail to support collective treatment of joint-employer questions. The declarants' barren assertions that Nomi "and" MedX hired them reveals next to nothing relevant to the joint-employer question (*see* Pl.'s Decls. 2, 4, 6, 8, 10, 12, 14, 16); and Defendants offer more specific, credible evidence suggesting that MedX, not Nomi, hired the declarants (*see* Tuisaula Decl. ¶¶ 4–5, 10). *See, e.g., Brooks v. A Rainaldi Plumbing, Inc.*, No. 6:06-cv-631, 2006 WL3544737, at *2 (M.D. Fla. Dec. 8, 2006) (denying motion to conditionally certify FLSA collective action because the plaintiffs offered "no explanation as to why [defendants] should be considered one enterprise, or joint employers of the putative class" (alteration added)). Even liberally construed, the declarants' uniform declarations do not inspire confidence that the joint-employer analysis will be the same as to each of them.

Plaintiff repeatedly underscores the "fairly lenient standard" that courts apply at the conditional certification stage. *Hipp*, 252 F.3d at 1218 (citation omitted); (Mot. 3–4, 6). But that

---

[5] Plaintiff contends that considering her and the declarants' similarities with respect to misclassification would be premature but alternatively argues that she should be permitted to supplement the record if the Court considers misclassification. (*See* Reply 7). Plaintiff has had ample opportunity to support her Motion with evidence that Defendants control her and the declarants in similar ways, and she offers no compelling reason to be afforded another chance. It is Plaintiff's burden, and her burden alone, to

standard provides Plaintiff no refuge. Her "burden is not heavy," but it is also "not invisible." *Brooks*, 2006 WL3544737, at *2. The declarants' cut-and-paste, vague declarations omit critical information relevant to whether conditional certification would serve judicial economy. *See Herrera*, 2017 WL 4270619, at *7 (explaining that a test requiring "individualized assessment" of each employee would disserve "judicial economy" (citations and quotation marks omitted)); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M.D. Ala. 2004) (denying conditional certification because plaintiffs had not shown "that conditionally certifying a nationwide collective action, or even a regional collective action, w[ould] partake of the economy of scale envisioned by the FLSA collective action procedure" (alteration added; citation omitted)). And that matters.

Congress devised the FLSA collective action procedure because "[t]he judicial system benefits by efficient resolution in one proceeding of *common issues of law and fact* arising from the same alleged discriminatory activity." *Hoffman-La Roche*, 493 U.S. at 170 (alteration and emphasis added). The record here, by contrast, suggests that questions of law and fact will be different across Plaintiff's proposed class. Because Plaintiff's minimal evidence of similarity poses far more questions than it furnishes answers, Plaintiff has not met her burden of justifying conditional certification.

In sum, Plaintiff has not justified conditional certification of an FLSA collective action in either factual or practical terms. There is therefore no need to determine whether Plaintiff's proposed notice of the action to potential class members is appropriate.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Plaintiff Alaa Eltahir's Motion for

---

establish the basis for conditional certification of her proposed collective. *See Calderone*, 838 F.3d at 1104; *Grayson*, 79 F.3d at 1097.

Collective Action **[ECF No. 40]** is **DENIED**.

     **DONE AND ORDERED** in Miami, Florida, this 11th day of September, 2022.

CECILIA M. ALTONAGA
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record