UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 0:22-CV-61046-CMA

ALAA ELTAHIR, MOLUN BERNADIN-PIERRE, NATHALIE PETITCAR, ALEX BUSGITH, MARANA PIERRE, LINDA JANVIER, FEDLINE SENOR, GUIRLENE BASTIEN, LITRENNE BEAUBRIANT, KARL-ROBERTE DONATIEN, ERNA EDOUARD, MADIANE JEAN-PIERRE, ISMERIE PETIT, VALERIE TOUSSAINT, JONAS PIERRE, CAROLYN SOYANT, YOANYS BERMUDEZ, DARLINE PHILIPPI, PRINCIA CHERY, EDUARDO BARREIRO, JOYCE GEORGE, MARK ANTHONY PINEDA, ARETHA WHILBY, MICHAELLE P. LAMOTHE, and ANA PELNAR,

   Plaintiffs,

 v.

NOMI HEALTH, INC., a Delaware Corporation; MEDX STAFFING INC., a Utah Corporation; MARK NEWMAN, an individual; JOSHUA WALKER, an individual; DANIEL SCHWENDIMAN, an individual,

   Defendants.

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AND TO DISMISS ACTION WITH PREJUDICE

  Plaintiffs Alaa Eltahir, Molun Berndadin-Pierre, Nathalie Petitcar, Alex Busgith, Marana Pierre, Linda Janvier, Fedeline Senor, Guirlene Bastien, Litrenne Beaubriant, Karl-Roberte Donatien, Erna Edouard, Madiane Jean-Pierre, Ismerie Petit, Valerie Toussaint, Jonas Pierre, Carline Soyant, Yoanys Bermudez, Darline Philippi, Princia Chery, Eduardo Barreiro, Joyce George, Mark Anthony Pineda, Aretha Whilby, Michaelle Pierre Lamothe, and Ana Pelnar (collectively, "Plaintiffs"), and Defendants Nomi Health, Inc., MedX Staffing, Inc., Mark

1

Newman, Joshua Walker, and Daniel Schwendiman (collectively, "Defendants") have entered into a case-wide settlement, which is reflected in the twenty-five agreements executed by each of the twenty-five Plaintiffs that resolves the claims alleged in this matter, in full.  The Settlement Agreement was reached after extensive investigation, arm's length settlement negotiations, and a settlement conference conducted by Magistrate Judge Jared M. Struass. The settlement is fair and reasonable, and it warrants this Court's approval.

Pursuant to the Settlement Agreement, Defendants will pay a gross settlement amount of three hundred and sixty-five thousand dollars ($365,000.00) (the "Gross Settlement Sum").  As set forth in the agreements, two hundred and fifty thousand dollars ($250,000.00) (the "Wage Settlement") of the Gross Settlement Sum will be paid to Plaintiffs in settlement and release of their claims under the Fair Labor Standards Act. That amount has been divided among the twenty-five Plaintiffs in proportion to their respective pay rates and time worked, as determined by Plaintiffs' counsel and as reflected in the settlement agreements. An additional eighty thousand dollars ($80,000.00) (the "Fee and Cost Settlement") of the Gross Settlement Sum was separately negotiated as the amount to be paid to Plaintiffs' counsel as attorneys' fees and costs, and is evenly divided among the settlement agreements. Finally, the remaining thirty-five thousand dollars ($35,000.00) (the "General Release Amount") of the Gross Settlement Sum was negotiated as independent consideration for general releases of claims (with carve-outs, where appropriate, for any individual having a pending EEOC charge as of October 2, 2022), a limited confidentiality clause, a nondisparagement clause, and a no-rehire clause.

The Settlement, as reflected in the agreements attached hereto, should be approved by the Court as a fair and reasonable resolution of a *bona fide* dispute.

## STATEMENT OF FACTS

Plaintiffs are Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), Certified Nursing Assistants ("CNAs"), and Medical Assistants ("MAs") who, with one exception,[1] worked through MedX and were classified by MedX as independent contractors. Plaintiffs each allege that they were each misclassified as independent contractors, and that Defendants were each their joint employers. Thus, Plaintiffs allege, Defendants violated the FLSA, by failing to pay an overtime premium for hours worked in excess of 40 in individual workweeks.

On June 2, 2022, Plaintiff Alaa Eltahir initiated the instant lawsuit as a putative FLSA collective action. Over the following months, each of the twenty-five Plaintiffs filed notices of consent to join the case as party plaintiffs. On August 3, 2022, Plaintiffs filed a motion for conditional certification of the case as an FLSA collective action. After briefing by the Parties, the Court denied that motion on September 12, 2022. Thereafter, Plaintiffs filed a Second Amended Complaint on September 22, 2022, with each then appearing as named plaintiffs.

Separately, the Magistrate Judge ordered the Parties to exchange time and pay data in their possession, custody, or control, concerning each named and opt-in Plaintiff, which the Parties did. At the instruction of the Magistrate Judge, the Parties further held an extensive discussion over Zoom to discuss the relative merits of their cases, to explain their respective calculations, and to identify the grounds for differences in each side's calculations. The Parties held that discussion, and engaged in further communications as additional Plaintiffs opted into the case following the discussion. Ultimately, the Parties discussions culminated in an over-half-day settlement conference with the Magistrate Judge.

---

[1] After Plaintiff Yoanys Bermudez joined the lawsuit, it was determined that she had not, in fact, worked for MedX.

As a result of the settlement conference, including the exchange of documents and information preceding it, the Parties have agreed fully and finally to resolve this matter on the terms and conditions described herein. Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiffs have considered: (a) the facts developed during the investigation and mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs to settle their claims against Defendants and the Releasees.

The Parties' investigations, substantial discovery, and extensive arms-length negotiations with the aid of Magistrate Judge Strauss resulted in this Settlement. Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. Nomi, Newman, Walker, and Schwendiman further deny they are joint employers of Plaintiffs. Defendants further contend that, even were liability found, there is no entitlement to liquidated damages because of its good-faith reliance on the DOL's independent contractor regulation implemented during the subject period.

The Parties now present the Settlement Agreement to the Court for its approval. The Settlement offers significant advantages over the continued prosecution of this case: Plaintiffs will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various defenses to their liability. The Parties have spent considerable time analyzing the available data and negotiating and drafting the

Settlement Agreement. The Parties now jointly move for approval of their settlement, as set forth herein.[2]

## MEMORANDUM OF LAW

Collective action settlements under the FLSA must be approved by a court to ensure fairness and to give effect to the FLSA releases. *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). The law favors compromise and settlement of class and collective action lawsuits. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting "strong judicial policy favoring settlement"). The policy favoring settlement is especially relevant in class or collective actions and other complex matters, where the inherent costs, delays, and risks of litigation might otherwise overwhelm any potential benefit the class could hope to attain. *See Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Courts generally consider "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Carrillo v. King Creek Hair Design Unisex Corp.*, No. 22-cv-21019-DAMIAN, 2022 WL 1591061, at *2 (S.D. Fla. May 19, 2022).

Settlement approval is warranted where, as here, the settlement resolves a *bona fide* dispute between the parties "with respect to coverage [and] amount due under the Act," is fair and reasonable, and is the product of serious, informed, arm's-length negotiations. *Lynn's Food Stores*,

---

[2] Although each Plaintiff has signed a separate agreement, the settlement amount was negotiated on a global basis, and as set forth in the agreements, no Plaintiff is entitled to any settlement payment unless this matter is dismissed with prejudice, in full. Thus, to the extent approval is denied for any individual agreement, it must be denied as to all individuals.

679 F.2d at 1353–54 & n.8; *see also Bennett*, 737 F.2d at 987 n.9. The Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

- whether each Plaintiff qualified as an independent contractor (to whom the FLSA would not be applicable) or an employee (to whom the FLSA would be applicable);
- whether Nomi qualified as a joint employer of any Plaintiff, if that individual were determined to be an employee;
- whether Plaintiffs' hours worked, as reported by Plaintiff, included time for hours not actually worked;
- whether Plaintiffs had received overpayments in various workweeks, for which Defendants would have been entitled to an offset;
- whether individual Plaintiffs may have entered into arbitration agreements;
- whether Defendants would be able to establish their good-faith defense to liquidated damages, including due to its reliance on the independent contractor regulation in place during the period at issue, even if this Court ultimately did not defer to that regulation; and
- whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

Accordingly, a *bona fide* dispute over FLSA provisions exists.[3] Ultimately, the Wage Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue. The Settlement reached represents an excellent result for the Settlement Collective Members. Indeed, the $250,000.00 Wage Settlement Amount represents slightly under 50% of the total amount Plaintiffs calculated as alleged damages (inclusive of liquidated damages). Notably, it is Defendants' position that, due to overpayments and other issues reflected in Plaintiffs' time and pay records, Plaintiffs' "best case" damages are, in fact, significantly lower than those claimed by Plaintiffs, and thus the Wage Settlement Amount reflects a higher percentage of the potential total damages in this case, even were liability established.

---

[3] Upon review of her pay and time records, however, Plaintiff Michaelle Pierre Lamothe determined that she had no viable overtime claim against Defendants, and thus that no dispute exists. Her release, thus, is simply a general release of all claims. Nevertheless, because she is receiving a payment as a result of the overall settlement, she is included in the instant motion.

Indeed, under Defendants' calculations the $250,000.00 would amount constitute more than half of the potential damages (inclusive of liquidated damages) for Plaintiffs.

There is no indicia of fraud or collusion with respect to this proposed settlement, which was reached after arm's-length negotiations, including a settlement conference conducted by a Magistrate Judge, and after the exchange of substantial data and analyses, along with meet and confers regarding potential exposure. The settlement is based on extensive and appropriate investigation, including detailed analyses of the data provided. Ultimately, represented by experienced counsel, and with assistance of an experienced mediator, the Parties have agreed to this Settlement as a fair and reasonable resolution of this case.

Because of each of the substantive issues noted above—and in light of the Court's conditional certification order indicating that certain facts in this case may weigh in favor of independent contractor status—a trial on the merits would involve significant risks for Plaintiffs, including the possibility of no recovery at all. Moreover, because discovery is in its early stages, continued litigation would likely lead to a substantial expenditure of time, money, and other resources by both Parties that would be avoided by this settlement. The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this settlement. *See Cotter v. Checkers Drive-In Rests.*, Inc., No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592, at *21 (M.D. Fla., 2021) ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain."); *Lunsford v. Woodforest Nat'l Bank,* No. 1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *21 (N.D. Ga. 2014) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of

the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect,"[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush." (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993))). Moreover, the Parties' respective counsel agree that the settlement is a reasonable resolution of this twenty-five-Plaintiff matter, in light of the foregoing considerations.

Notably, there is a "strong presumption in favor of finding a [FLSA] settlement fair," when, as here, it is the product of serious, informed, arms-length negotiations. *Carrillo*, 2022 WL 1591061, at *2. Absent fraud and collusion, the Court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough County Hosp. Auth.,* No. 90 Civ. 120, 2000 U.S. Dist. LEXIS 14061, at *4 (M.D. Fla. Aug. 7, 2000). As stated throughout, the Settlement should be approved as fair and reasonable.

## ATTORNEYS' FEES AND COSTS

Under the Settlement, Defendants are to pay Plaintiffs' Counsel a separately-negotiated Fees and Costs Settlement Amount of $80,000.00 for attorneys' fees and costs. Plaintiffs' counsel maintains that the fees and costs contemplated by the Settlement are reasonable and should be approved. Prosecuting this case to a successful settlement for the benefit of 25 Plaintiffs required Plaintiffs' Counsel to develop the legal theories of the case, conduct substantial legal and factual research on the alleged violations, investigate each Plaintiff's claim, review time and pay records, prepare for and attending the settlement conference with the Magistrate Judge, and finalize the settlement agreements.

Moreover, that Plaintiffs' Counsel agreed to represent Plaintiffs and the proposed Settlement Collective on a contingent basis supports approval of the requested fee. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain

counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F. 2d 367, 371 (2d Cir. 1990)). Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of a requested fee award: "In undertaking to prosecute [a] complex case entirely on a contingent fee basis, Class Counsel assume[s] a significant risk of nonpayment or underpayment. . . . That risk warrants an appropriate fee. 'A contingency fee arrangement often justifies an increase in the award of attorney's fees.'" *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548, *aff'd*, 899 F.2d 21 (11th Cir. 1990)); see also *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of nonpayment).

The handling attorneys for Plaintiffs in this case (Mr. Obeidy, Ms. Scott, and Mr. Roberts) have maintained contemporaneous time records that exceed the amount of time they have agreed to accept as part of this compromised settlement. The proposed agreed upon fee and cost awards is $3,200 per plaintiff, or approximately 7.1 hours of time per plaintiff at a $450 per hour rate. Given the extensive experience and certifications of the Plaintiffs' counsel, Plaintiffs submit that would be a reasonable average rate to expect in this case. Ms. Scott is board certified in labor and employment law and has been practicing since 1998, Mr. OBeidy has similarly been practicing labor and employment law for over 20 years.

Plaintiffs submit that the actual time spent in this case far exceeds that. Not including the time related to this motion and receiving final approval, the Scott Law Team calculates that it has billed approximately $52,000 in fees for this case. Obeidy & Associates, P.A. calculates that it has

billed $59,000. That total amount of $111,000 is significantly more than the $80,000 in fees separately-negotiated as part of this Settlement.

For these reasons, Plaintiffs' Counsel requests that the Court approve the Fees and Costs Settlement Amount set forth in the Settlement Agreement.

## NON-FLSA TERMS FOR INDEPENDENT CONSIDERATION

Additionally, the Parties separately negotiated for the Named Plaintiffs to receive consideration separate and apart from the consideration they would receive as part of the FLSA collective action settlement, in exchange for general releases,[4] a limited confidentiality clause that permits the public filing of the agreements, a nondisparagement clause, and a no-rehire clause. This consideration will be paid to the Plaintiffs in addition to the Named Plaintiffs' awards from the Wage Settlement Amount under the agreements, and does not impact the approval of the agreements. *See, e.g.*, *Villa v. Turcios Grp. Corp.*, No. 21-cv-23709-COOKE/DAMIAN, 2022 WL 2713741, at *6 (S.D. Fla. July 12, 2022) (holding that general releases—as well as confidentiality, non-incitement, and no-rehire clauses—do not undermine an agreement's fairness and should be approved when supported by separate consideration); *Clarke v. Alta Resources Corp.*, No. 2:17-cv-276-FtM-99CM, 2017 WL 4958771, at *3 (M.D. Fla. Oct. 30, 2017) (holding that an FLSA settlement was not undermined by a separate general release when there was "an additional $500.00 as consideration for Plaintiff's general release of claims").

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant this Motion and dismiss this case with prejudice.

---

[4] To the extent Plaintiffs have any separately pending claims, their agreements carve out those claims from the release.

Respectfully submitted this 9th day of November, 2022.

/s/ *Cathleen Ann Scott*
Cathleen Ann Scott
Florida Bar No. 135331
SCOTT WAGNER & ASSOCIATES, P.A.
Jupiter Gardens
250 South Central Boulevard
Suite 104-A
Jupiter, FL 33458
cscott@scottlawteam.com

/s/ *Andrew OBeidy*
A. Andrew OBeidy, Esq.
Florida Bar No.: 0910341
OBEIDY & ASSOCIATES, P.A.
2755 E. Oakland Park Blvd.
Suite 225
Fort Lauderdale, FL 33306
Telephone: (305) 892-5454
Facsimile: (954) 530-6953
andrew@obdlegal.com

*Attorneys for Plaintiff Alaa Eltahir*

/s/ *Andrew M. McKinley*
Andrew M. McKinley
Florida Bar No.: 122069
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3962
Telephone: (404) 885-1500
Facsimile: (404) 892-7056
amckinley@seyfarth.com

*Attorney for Defendants Nomi Health, Inc., MedX Staffing, Inc., Mark Newman, Joshua Walker, and Daniel Schwendiman*