**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 0:22-CV-61046-CMA**

| | |
|---|---|
| ALAA ELTAHIR, MOLUN BERNADIN-PIERRE, NATHALIE PETITCAR, ALEX BUSGITH, MARANA PIERRE, LINDA JANVIER, FEDLINE SENOR, GUIRLENE BASTIEN, LITRENNE BEAUBRIANT, KARL-ROBERTE DONATIEN, ERNA EDOUARD, MADIANE JEAN-PIERRE, ISMERIE PETIT, VALERIE TOUSSAINT, JONAS PIERRE, CAROLYN SOYANT, YOANYS BERMUDEZ, DARLINE PHILIPPI, PRINCIA CHERY, EDUARDO BARREIRO, JOYCE GEORGE, MARK ANTHONY PINEDA, ARETHA WHILBY, MICHAELLE P. LAMOTHE, and ANA PELNAR, | |
| Plaintiffs, | |
| v. | |
| NOMI HEALTH, INC., a Delaware Corporation; MEDX STAFFING INC., a Utah Corporation; MARK NEWMAN, an individual; JOSHUA WALKER, an individual; DANIEL SCHWENDIMAN, an individual, | |
| Defendants. | |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND TO DISMISS ACTION WITH PREJUDICE**

Plaintiffs Alaa Eltahir, Molun Berndadin-Pierre, Nathalie Petitcar, Alex Busgith, Marana Pierre, Linda Janvier, Fedeline Senor, Guirlene Bastien, Litrenne Beaubriant, Karl-Roberte Donatien, Erna Edouard, Madiane Jean-Pierre, Ismerie Petit, Valerie Toussaint, Jonas Pierre, Carline Soyant, Yoanys Bermudez, Darline Philippi, Princia Chery, Eduardo Barreiro, Joyce George, Mark Anthony Pineda, Aretha Whilby, Michaelle Pierre Lamothe, and Ana Pelnar (collectively, "Plaintiffs"), and Defendants Nomi Health, Inc., MedX Staffing, Inc., Mark

1

Newman, Joshua Walker, and Daniel Schwendiman (collectively, "Defendants") have entered into a case-wide settlement, which is reflected in the twenty-five agreements executed by each of the twenty-five Plaintiffs that resolves the claims alleged in this matter, in full. The Settlement Agreement was reached after extensive investigation, arm's length settlement negotiations, and a settlement conference conducted by Magistrate Judge Jared M. Struass. The settlement is fair and reasonable, and it warrants this Court's approval.

Pursuant to the Settlement Agreement, Defendants will pay a gross settlement amount of three hundred and sixty-five thousand dollars ($365,000.00) (the "Gross Settlement Sum"). As set forth in the agreements, two hundred and fifty thousand dollars ($250,000.00) (the "Wage Settlement") of the Gross Settlement Sum will be paid to Plaintiffs in settlement and release of their claims under the Fair Labor Standards Act. That amount has been divided among the twenty-five Plaintiffs in proportion to their respective pay rates and time worked, as determined by the actual records produced by Defendant, with an equal amount in unliquidated and liquidated damages, as reflected in the attached settlement agreements. An additional eighty thousand dollars ($80,000.00) (the "Fee and Cost Settlement") of the Gross Settlement Sum was separately negotiated, and agreed to, as the amount to be paid to Plaintiffs' counsel as attorneys' fees and costs, and is evenly divided among the settlement agreements. Finally, the remaining thirty-five thousand dollars ($35,000.00) (the "General Release Amount") of the Gross Settlement Sum was negotiated as independent consideration for general releases of claims (with carve-outs, where appropriate, for any individual having a pending EEOC charge as of October 2, 2022), a limited confidentiality clause, a nondisparagement clause, and a no-rehire clause.

The Settlement, as reflected in the agreements attached hereto, should be approved by the Court as a fair and reasonable resolution of a *bona fide* dispute.

## STATEMENT OF FACTS

Plaintiffs are Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), Certified Nursing Assistants ("CNAs"), and Medical Assistants ("MAs") who, with one exception,[1] worked through MedX and were classified by MedX as independent contractors. Plaintiffs each allege that they were each misclassified as independent contractors, and that Defendants were each their joint employers. Thus, Plaintiffs allege, Defendants violated the FLSA, by failing to pay an overtime premium for hours worked in excess of 40 in individual workweeks.

On June 2, 2022, Plaintiff Alaa Eltahir initiated the instant lawsuit as a putative FLSA collective action. Over the following months, each of the twenty-five Plaintiffs filed notices of consent to join the case as party plaintiffs. On August 3, 2022, Plaintiffs filed a motion for conditional certification of the case as an FLSA collective action. After briefing by the Parties, the Court denied that motion on September 12, 2022. Thereafter, Plaintiffs filed a Second Amended Complaint on September 22, 2022, with each then appearing as named plaintiffs.

Separately, the Magistrate Judge ordered the Parties to exchange time and pay data in their possession, custody, or control, concerning each named and opt-in Plaintiff, which the Parties did. At the instruction of the Magistrate Judge, the Parties further held an extensive discussion over Zoom to discuss the relative merits of their cases, to explain their respective calculations, and to identify the grounds for differences in each side's calculations. The Parties held that discussion, and engaged in further communications as additional Plaintiffs opted into the case following the discussion. Ultimately, the Parties discussions culminated in an over-half-day settlement conference with the Magistrate Judge.

---

[1] After Plaintiff Yoanys Bermudez joined the lawsuit, it was determined that she had not, in fact, worked for MedX.

As a result of the settlement conference, including the exchange of documents and information preceding it, the Parties have agreed fully and finally to resolve this matter on the terms and conditions described herein. Plaintiffs' Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiffs have considered: (a) the facts developed during the investigation and mediation process and the law applicable thereto; (b) the risks of continued litigation; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiffs to settle their claims against Defendants and the Releasees.

The Parties' investigations, substantial discovery, and extensive arms-length negotiations with the aid of Magistrate Judge Strauss resulted in this Settlement. Defendants deny the allegations in this lawsuit and further deny any liability for any alleged wage and hour violations or failure to pay overtime compensation. Nomi, Newman, Walker, and Schwendiman further deny they are joint employers of Plaintiffs. Specifically, Defendants deny that they misclassified any Plaintiff as an independent contractor. Defendants further contend that, even were liability found, there is no entitlement to liquidated damages because of its good-faith reliance on the DOL's independent contractor regulation implemented during the subject period.

The amount in damages payable to each Plaintiff is based on the number of hours worked and the Plaintiff's hourly rate of pay. These hours and pay rates are taken directly from the actual records for each Plaintiff as provided by Defendants. Attached as a composite exhibit with this Motion are the specific calculations that Plaintiff's counsel put together for each Plaintiff. The table below summarizes the hours, and owed overtime, that each Plaintiff alleged prior to the

4

settlement conference. Defendant did not agree with each calculation, but after negotiation, the parties reached the compromise reflected in each agreement.

| Plaintiff's Name | Alleged Overtime Hours | Alleged Overtime Owed | Settlement Payment for Alleged Unliquidated Damages | Settlement Payment for Alleged Liquidated Damages |
|---|---|---|---|---|
| Eltahir | 683.89 | $13,414.09 | $6,707.04 | $6,707.04 |
| Toussaint | 8.00 | $140.00 | $70.00 | $70.00 |
| Bastien | 467.88 | $8,187.90 | $4,093.95 | $4,093.95 |
| Beaubriant | 772.81 | $13,524.18 | $6,762.09 | $6,762.09 |
| Donatien | 637.70 | $12,105.38 | $6,052.69 | $6,052.69 |
| Edouard | 1399.30 | $29,263.45 | $14,631.72 | $14,631.72 |
| Jean-Pierre | 1049.20 | $18,361.00 | $9,180.50 | $9,180.50 |
| Petit | 721.49 | $12,626.08 | $6,313.04 | $6,313.04 |
| Busgith | 1556.24 | $14,556.15 | $7,278.07 | $7,278.07 |
| Soyant | 1314.89 | $21,386.53 | $10,693.26 | $10,693.26 |
| Philippe | 319.09 | $3,190.90 | $1,595.45 | $1,595.45 |
| Barreiro | 129.18 | $2,113.41 | $1,056.70 | $1,056.70 |
| Senor | 7.66 | $183.84 | $91.92 | $91.92 |
| Pierre, J | 84.03 | $1,446.18 | $723.09 | $723.09 |
| George | 340.22 | $3,742.42 | $1,871.21 | $1,871.21 |
| Janvier | 1520.99 | $26,617.33 | $13,308.66 | $13,308.66 |
| Pierre, M | 816.62 | $14,290.85 | $7,145.42 | $7,145.42 |
| Bernadin-Pierre | 570.31 | $9,876.13 | $4,938.06 | $4,938.06 |
| Petitcar | 894.40 | $8,957.10 | $4,478.55 | $4,478.55 |
| Chery | 19.22 | $336.35 | $168.17 | $168.17 |
| Pelnar | 90.08 | $3,887.68 | $1,943.84 | $1,943.84 |
| Whilby | 270.28 | $6,012.92 | $3,006.46 | $3,006.46 |
| Lamothe | 0.00 | $0.00 | $350.00 | $350.00 |
| Bermudez | 0.00 | $0.00 | $50.00 | $50.00 |
| Pineda | 273.89 | $25,785.73 | $12,892.86 | $12,892.86 |
| **TOTAL** | | **$250,005.60** | **$125,402.75** | **$125,402.75** |

Based on the defense raised by Defendants that the Plaintiffs were independent contractors, the Settled Number above is a compromise that factors in the possibility that the Plaintiffs could be determined to be independent contractors, and therefore not eligible for overtime pay.

The Parties now present the Settlement Agreement to the Court for its approval. The Settlement offers significant advantages over the continued prosecution of this case: Plaintiffs will receive significant financial compensation and will avoid the risks inherent in the continued prosecution of this case in which Defendants would assert various defenses to their liability. The Parties have spent considerable time analyzing the available data and negotiating and drafting the Settlement Agreement. The Parties now jointly move for approval of their settlement, as set forth herein.[2]

## MEMORANDUM OF LAW

Collective action settlements under the FLSA must be approved by a court to ensure fairness and to give effect to the FLSA releases. *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). The law favors compromise and settlement of class and collective action lawsuits. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting "strong judicial policy favoring settlement"). The policy favoring settlement is especially relevant in class or collective actions and other complex matters, where the inherent costs, delays, and risks of litigation might otherwise overwhelm any potential benefit the class could hope to attain. *See Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Courts generally consider "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the

---

[2] Although each Plaintiff has signed a separate agreement, the settlement amount was negotiated on a global basis, and as set forth in the agreements, no Plaintiff is entitled to any settlement payment unless this matter is dismissed with prejudice, in full. Thus, to the extent approval is denied for any individual agreement, it must be denied as to all individuals.

opinions of the counsel." *Carrillo v. King Creek Hair Design Unisex Corp.*, No. 22-cv-21019-DAMIAN, 2022 WL 1591061, at *2 (S.D. Fla. May 19, 2022).

Settlement approval is warranted where, as here, the settlement resolves a *bona fide* dispute between the parties "with respect to coverage [and] amount due under the Act," is fair and reasonable, and is the product of serious, informed, arm's-length negotiations. *Lynn's Food Stores*, 679 F.2d at 1353–54 & n.8; *see also Bennett*, 737 F.2d at 987 n.9.  The Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

- whether each Plaintiff qualified as an independent contractor (to whom the FLSA would not be applicable) or an employee (to whom the FLSA would be applicable);
- whether Nomi qualified as a joint employer of any Plaintiff, if that individual were determined to be an employee;
- whether Plaintiffs' hours worked, as reported by Plaintiff, included time for hours not actually worked;
- whether Plaintiffs had received overpayments in various workweeks, for which Defendants would have been entitled to an offset;
- whether individual Plaintiffs may have entered into arbitration agreements;
- whether Defendants would be able to establish their good-faith defense to liquidated damages, including due to its reliance on the independent contractor regulation in place during the period at issue, even if this Court ultimately did not defer to that regulation; and
- whether Plaintiffs and/or Defendants would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

Accordingly, a *bona fide* dispute over FLSA provisions exists.[3] Ultimately, the Wage Settlement Amount agreed upon represents a compromised resolution on these issues, accounts for the risks of litigation, and provides certain, immediate, and meaningful payment for the workers in this case for the time period at issue. The Settlement reached represents an excellent result for the Settlement Collective Members. Indeed, the $250,000.00 Wage Settlement Amount represents

---

[3] Upon review of her pay and time records, however, Plaintiff Michaelle Pierre Lamothe determined that she had no viable overtime claim against Defendants, and thus that no dispute exists. Her release, thus, is simply a general release of all claims. Nevertheless, because she is receiving a payment as a result of the overall settlement, she is included in the instant motion.

the entirety of the overtime wages owed to each Plaintiff, and approximately 50% of the total amount Plaintiffs calculated as alleged damages (inclusive of liquidated damages).  Notably, it is Defendants' position that, due to overpayments and similar issues reflected in Plaintiffs' time and pay records, Plaintiffs' "best case" damages are, in fact, significantly lower than those claimed by Plaintiffs, and thus the Wage Settlement Amount reflects a substantially higher percentage of the Wage Settlement Sum.

There is no indicia of fraud or collusion with respect to this proposed settlement, which was reached after arm's-length negotiations, including a settlement conference conducted by a Magistrate Judge, and after the exchange of substantial data and analyses, along with meet and confers regarding potential exposure.  The settlement is based on extensive and appropriate investigation, including detailed analyses of the data provided. Ultimately, represented by experienced counsel, and with assistance of an experienced mediator, the Parties have agreed to this Settlement as a fair and reasonable resolution of this case.

Because of each of the substantive issues noted above—and in light of the Court's conditional certification order indicating that certain facts in this case may weigh in favor of independent contractor status—a trial on the merits would involve significant risks for Plaintiffs, including the possibility of no recovery at all. Moreover, because discovery is in its early stages, continued litigation would likely lead to a substantial expenditure of time, money, and other resources by both Parties that would be avoided by this settlement. The likely risks, complexity, delay and expense of proceeding with litigation are clearly outweighed by the substantial and immediate financial relief presented by this settlement. *See Cotter v. Checkers Drive-In Rests*., Inc., No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592, at *21 (M.D. Fla., 2021) ("The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any

potential benefit the class could hope to obtain."); *Lunsford v. Woodforest Nat'l Bank,* No. 1:12-cv-103-CAP, 2014 U.S. Dist. LEXIS 200716, at *21 (N.D. Ga. 2014) ("[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect,"[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush." (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993))). Moreover, the Parties' respective counsel agree that the settlement is a reasonable resolution of this twenty-five-Plaintiff matter, in light of the foregoing considerations.

Notably, there is a "strong presumption in favor of finding a [FLSA] settlement fair," when, as here, it is the product of serious, informed, arms-length negotiations. *Carrillo*, 2022 WL 1591061, at *2. Absent fraud and collusion, the Court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough County Hosp. Auth.,* No. 90 Civ. 120, 2000 U.S. Dist. LEXIS 14061, at *4 (M.D. Fla. Aug. 7, 2000). As stated throughout, the Settlement should be approved as fair and reasonable.

## ATTORNEYS' FEES AND COSTS

Under the Settlement, Defendants are to pay Plaintiffs' Counsel a separately-negotiated, and agreed to, Fees and Costs Settlement Amount of $80,000.00 for attorneys' fees and costs, payable as $40,000 to each firm. Plaintiffs' counsel maintains that the fees and costs contemplated by the Settlement are reasonable and should be approved. Prosecuting this case to a successful settlement for the benefit of 25 Plaintiffs required Plaintiffs' Counsel to develop the legal theories of the case, conduct substantial legal and factual research on the alleged violations, investigate each Plaintiff's claim, review time and pay records, prepare for and attend the settlement conference with the Magistrate Judge, and finalize the settlement agreements. As set out in the

Court's prior order (DE 83), the Court must consider the following factors in determining whether requested attorney's fees are reasonable:

1) the time and labor required;

2) the novelty and difficulty of the questions;

3) the skill requisite to perform the legal service properly;

4) the preclusion of other employment by the attorney due to the acceptance of the case;

5) the customary fee;

6) whether the fee is fixed or contingent;

7) time limitations imposed by the client or the circumstances;

8) the amount involved and the results obtained;

9) the experience, reputation and ability of the attorneys;

10) the "undesirability" of the case;

11) the nature and length of the professional relationship with the client; and

12) awards in similar cases.

*Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 n.7 (11th Cir. 1999) (citation omitted).

Each factor here weighs in favor of approving the negotiated and agreed to fees in this case.

Plaintiffs submit that the time and labor required in handling this case was extensive. The handling attorneys for Plaintiffs in this case Mr. Obeidy, Ms. Scott, and Mr. Roberts have maintained contemporaneous time records that exceed the amount of time they have agreed to accept as part of this compromised settlement. Enclosed with this motion are affidavits of Ms. Scott and Mr. Obeidy reflecting the hours worked by their firms on this matter. The affidavits detail the number of hours each counsel worked on the case, the description of the work done for those hours, and the hourly rates used to calculate reasonableness of the fees. Each affidavit also

includes citations to recent orders wherein judges of this district approved the fees of lead counsel and their staff.

Plaintiffs submit that the actual time spent in this case far exceeds the agreed-to fee amount. Not including the time related to this motion and receiving final approval, the Scott Law Team calculates that it has billed approximately $50,799.50 in fees for this case. Obeidy & Associates, P.A. calculates that is has billed $56,880. That total amount of $107,679.50 is significantly more than the $80,000 in fees separately-negotiated, and agreed to, as part of this Settlement.

The proposed agreed upon fee and cost awards is $3,200 per plaintiff, or eight hours of time per plaintiff at a $400 per hour rate.[4] Given the work that went into reviewing the claims and time records for each Plaintiff, as well as drafting each pleading and correspondence that resulted in this fair and reasonable compromise, Plaintiffs state that more than eight hours of work went into each Plaintiff's case. This work included interviewing and signing up each Plaintiff, requesting and receiving the time records for each Plaintiff, reviewing each of those records—some of which included multiple hundreds of pages—and using that information to zealously prosecute this case to a fair and reasonable settlement of the issues. Counsel for the parties engaged in multiple negotiations, which culminated in the settlement conference in this case where the parties were able to reach a compromise that properly factors in the inherent risks of this case.

The novelty and difficulty of the questions presented in this case also weigh in favor of approval of the fees. Plaintiffs' Counsel submit that they were required to research and complete an analysis for each Plaintiff as to their classification as an independent contractor. This research was necessary to prepare, draft, and file the motion for conditional certification. Likewise, this supports the skill required in litigating this matter. With 25 individual Plaintiffs, counsel were

---

[4] The fee commonly charged by Ms. Scott is $450, Mr. Roberts is $325 and Mr. O'Beidy is $450.

required to field calls and inquiries, and address the concerns of each Plaintiff. This skill was most reflected in the settlement conference of this case when Plaintiff's Counsel ensured that all 25 Plaintiffs were able to attend the conference, be present, and ultimately each individually go over the terms of the settlement and confirm to the Magistrate Judge that they agreed with the resolution in this case.

Plaintiffs' counsel further submit that the time spent on this case reflects time that counsel were precluded from working on other employment, and the fees here were the standard fee each counsel charges for all cases, including hourly work for non-contingent cases.

Moreover, that Plaintiffs' Counsel agreed to represent Plaintiffs and the proposed Settlement Collective on a contingent basis supports approval of the requested fee. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F. 2d 367, 371 (2d Cir. 1990)). Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of a requested fee award: "In undertaking to prosecute [a] complex case entirely on a contingent fee basis, Class Counsel assume[s] a significant risk of nonpayment or underpayment. . . . That risk warrants an appropriate fee. 'A contingency fee arrangement often justifies an increase in the award of attorney's fees.'" *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548, *aff'd*, 899 F.2d 21 (11th Cir. 1990)); see also *In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of nonpayment).

The amount involved in this matter, and the result obtained, also supports approval of the fee. Each Plaintiff is receiving overtime wages and liquidated calculated from their pay records, in exchange for a release of their wage-related claims.

Finally, the extensive experience and certifications of the Plaintiffs' counsel support the fee. Ms. Scott is board certified in labor and employment law and has been practicing since 1998, Mr. OBeidy has similarly been practicing labor and employment law for over 20 years. Each attorney has specific experience in litigation of wage and hour claims on a class, or collective basis. Each attorney has also had their fees approved by courts, in this district and others, at a rate similar to the rate agreed to in this case. A representative collection of cases are cited to in the affidavits by Ms. Scott and Mr. OBeidy.

Based on their declarations, the Scott Law Team has 134.25 hours and $50,799.50 in attorney fees and Obeidy & Associates has 142.20 hours and $56,880 in attorney fees.

| Scott Law Team | Timekeeper | Rate | Total Hours |
|---|---|---|---|
|  | Cathleen Scott (board Certified in labor and employment) | $450 | 91.85 |
|  | Gabe Roberts | $325 | 17.80 |
|  | Ashley Prescott | $150 | 24.50 |
|  | Porsche Brailsford | $70 | 0.10 |
| OBeidy & Associates | Andrew OBeidy | $400 | 142.20 |

For these reasons, Plaintiffs' Counsel requests that the Court approve the Fees and Costs Settlement Amount set forth in the Settlement Agreement.

## **NON-FLSA TERMS FOR INDEPENDENT CONSIDERATION**

Additionally, the Parties separately negotiated for the Named Plaintiffs to receive consideration separate and apart from the consideration they would receive as part of the FLSA

13

collective action settlement, in exchange for general releases,[5] a limited confidentiality clause that permits the public filing of the agreements, a nondisparagement clause, and a no-rehire clause. This consideration will be paid to the Plaintiffs in addition to the Named Plaintiffs' awards from the Wage Settlement Amount under the agreements, and does not impact the approval of the agreements. *See, e.g.*, *Villa v. Turcios Grp. Corp.*, No. 21-cv-23709-COOKE/DAMIAN, 2022 WL 2713741, at *6 (S.D. Fla. July 12, 2022) (holding that general releases—as well as confidentiality, non-incitement, and no-rehire clauses—do not undermine an agreement's fairness and should be approved when supported by separate consideration); *Clarke v. Alta Resources Corp.*, No. 2:17-cv-276-FtM-99CM, 2017 WL 4958771, at *3 (M.D. Fla. Oct. 30, 2017) (holding that an FLSA settlement was not undermined by a separate general release when there was "an additional $500.00 as consideration for Plaintiff's general release of claims").

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant this Motion and dismiss this case with prejudice.

Respectfully submitted this 22nd day of November, 2022.

| | |
|---|---|
| */s/ Cathleen Ann Scott* | */s/ Andrew M. McKinley* |
| Cathleen Ann Scott | Andrew M. McKinley |
| Florida Bar No. 135331 | Florida Bar No.: 122069 |
| SCOTT WAGNER & ASSOCIATES, P.A. | SEYFARTH SHAW LLP |
| Jupiter Gardens | 1075 Peachtree Street, N.E., Suite 2500 |
| 250 South Central Boulevard | Atlanta, Georgia 30309-3962 |
| Suite 104-A | Telephone: (404) 885-1500 |
| Jupiter, FL 33458 | amckinley@seyfarth.com |
| cscott@scottlawteam.com | |
| | *Attorney for Defendants Nomi Health, Inc., MedX Staffing, Inc., Mark Newman, Joshua Walker, and Daniel Schwendiman* |

---

[5] To the extent Plaintiffs have any separately pending claims, their agreements carve out those claims from the release.

14

*/s/ Andrew OBeidy*
A. Andrew OBeidy, Esq.
Florida Bar No.: 0910341
OBEIDY & ASSOCIATES, P.A.
2755 E. Oakland Park Blvd.
Suite 225
Fort Lauderdale, FL 33306
Telephone: (305) 892-5454
Facsimile: (954) 530-6953
andrew@obdlegal.com

*Attorneys for Plaintiff Alaa Eltahir*